IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIEMENS INDUSTRY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-284 (LPS) (CJB) |
| | ) | |
| WESTINGHOUSE AIR BRAKE | ) | **JURY TRIAL DEMANDED** |
| TECHNOLOGIES CORPORATION | ) | |
| (d/b/a WABTEC CORPORATION) and | ) | |
| WABTEC RAILWAY ELECTRONICS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**SIEMENS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO SEVER
DEFENDANTS' PATENT INFRINGEMENT COUNTERCLAIMS**

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
OF COUNSEL:                     Wilmington, DE 19899-1347
                                (302) 658-9200
Mark Supko                      jblumenfeld@mnat.com
Kathryn L. Clune                kjacobs@mnat.com
Vincent J. Galluzzo
CROWELL & MORING LLP            *Attorneys for Siemens Industry, Inc.*
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

March 20, 2017

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................1

III.    STATEMENT OF FACTS .......................................................................................4

IV.     WABTEC'S INFRINGEMENT COUNTERCLAIMS SHOULD BE SEVERED
        FROM THIS ACTION .............................................................................................6

        A.      Severance Is Appropriate Because Wabtec's Infringement Counterclaims
                Are Separate and Distinct from Siemens' Infringement Claims .........................7

        B.      Severance Is Necessary to Avoid Unduly Complicating this Already
                Complex Case, and to Reduce the Risk of Jury Confusion and Burden...............8

        C.      Siemens Will Be Unduly Prejudiced If Wabtec's Counterclaims Are Not
                Severed....................................................................................................13

V.      CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*BancMortgage Fin. Corp. v. Guarantee Title & Trust Co.*,
No. 99-cv-2932, 2000 WL 1521600 (E.D. Pa. Oct. 6, 2000) ...................................................7

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*,
No. 12-cv-205, D.I. 33 (D. Del. July 19, 2012) ....................................................................8

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
896 F. Supp. 505 (D. Md. 1995) ...........................................................................................9

*Eurand Inc. v. Mylan Pharm. Inc.*,
No. 08-cv-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ........................................9-10

*General Tire & Rubber Co. v. Jefferson Chem. Co.*,
50 F.R.D. 112 (S.D.N.Y. 1970) .............................................................................................9

*Grigsby v. Kane*,
250 F. Supp. 2d 453 (M.D. Pa. 2003) ...................................................................................6

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986)........................................................................................7, 13

*Karlo v. Pittsburgh Glass Works, LLC*,
No. 2:10-cv-1283, 2015 WL 6134052 (W.D. Pa. Oct. 16, 2015).....................................6-7, 8

*Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*,
No. 07-cv-613, 2008 WL 4559703 (W.D. Wis. Jan. 24, 2008)...............................................9

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
No. 12-cv-1063, D.I. 91 (D. Del. July 22, 2015) ...............................................................8, 11

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
143 F.R.D. 553 (D. Del. 1992) .......................................................................................7, 8-9, 12

*Senju Pharm. Co. v. Apotex Inc.*,
891 F. Supp. 2d 656 (D. Del. 2012), *aff'd*, 746 F.3d 1344 (Fed. Cir. 2014) ........................7-8

*Sonos Inc. v. D&M Holdings, Inc.*,
No. 14-cv-1330, D.I. 100, (D. Del. Mar. 7, 2016) ..................................................................9

*Walsh v. Miehle-Goss-Dexter, Inc.*,
378 F.2d 409 (3d Cir. 1967)..................................................................................................6

## I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

Nearly a year after Siemens initiated this patent infringement suit, Wabtec has asserted new counterclaims alleging that Siemens infringes three Wabtec patents.[1]  Notwithstanding some similarity in the general field of technology to which the various patents relate, Wabtec's infringement counterclaims are unrelated to Siemens' original claims and will involve different factual and legal issues, different accused products, different witnesses, and different evidence. Trying to resolve Wabtec's infringement counterclaims at the same time as Siemens' original claims will thus unduly complicate and delay this already complex case, present an unacceptable risk of jury confusion and burden, and unduly prejudice Siemens.   Accordingly, Siemens respectfully requests that the Court sever Wabtec's infringement counterclaims into a separate action.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

This action concerns Wabtec's willful infringement of thirteen Siemens patents relating to various aspects of automated control and/or monitoring of trains.  Siemens filed its original Complaint on April 21, 2016, initially accusing Wabtec of infringing seven patents.  (D.I. 1.) Five of the originally asserted patents concern inventions relating to Positive Train Control, or "PTC," which is a set of advanced technologies designed to make freight and passenger rail transportation safer by automatically stopping or slowing a train to prevent certain types of accidents.  (*See id.*, ¶¶ 16-22.)  The PTC architecture comprises four core segments—Back Office, Locomotive, Wayside, and Maintenance of Way (MOW)—with a combination of wireless and wired communications linking components in the different core segments.  (*Id.*, ¶

---

[1] The terms "Wabtec" and "Defendants" each refer collectively to Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc.  The term "Siemens" refers to Plaintiff Siemens Industry, Inc.

17.)  Siemens' asserted U.S. Patent Nos. 6,996,461 ("the '461 Patent"), 7,092,801 ("the '801 Patent"), and 7,236,860 ("the '860 Patent") pertain to various aspects of PTC systems and functionality for the Locomotive segment, while U.S. Patent Nos. 8,714,494 ("the '494 Patent") and 9,233,698 ("the '698 Patent") pertain to systems and functionality for the Back Office segment.  (*Id.*, ¶¶ 9-11, 14-15, 33-69, 84-98.)

The remaining two patents asserted in the original Complaint concern computer monitoring and tracking of End-of-Train ("EOT") devices, which are telemetry units placed on the last car of trains to serve functions similar to those previously provided by cabooses.  (*Id.*, ¶¶ 29-30.)  Siemens' U.S. Patent Nos. 7,467,032 ("the '032 Patent") and 7,742,850 ("the '850 Patent") pertain to various aspects of EOT monitoring and tracking.  (*Id.*, ¶¶ 12-13, 70-83.)

This case is already far along.  Wabtec answered Siemens' original Complaint on June 17, 2016, and counterclaimed for a declaratory judgment of non-infringement and invalidity as to each asserted Siemens patent.  (D.I. 14.)  Wabtec did not counterclaim for infringement of any of its own patents.  (*Id.*)  The parties thereafter negotiated a proposed scheduling order (D.I. 20), which the Court entered on August 22, 2016 (D.I. 27).  That order set February 1, 2017, as the deadline for amending pleadings.  (*Id.*, ¶ 2.)

On November 2, 2016, well in advance of the deadline for doing so, Siemens moved to amend its Complaint.  (D.I. 41.)  In its proposed First Amended Complaint, Siemens accused Wabtec of willfully infringing six additional patents, based on information obtained in confidential Wabtec technical documents produced to Siemens.  (D.I. 42, Siemens Ltr. Br. in Supp. of Mot. to Amend, at 2; D.I. 41-1, First Amended Complaint; D.I. 44, Siemens Reply Ltr. Br. in Supp. of Mot. to Amend, at 1.)  Each of those additional patents—Siemens' U.S. Patent Nos. 6,978,195 ("the '195 Patent"), 7,079,926 ("the '926 Patent"), 7,200,471 ("the '471 Patent"),

6,845,953 ("the '953 Patent"), 7,036,774 ("the '774 Patent"), and 6,824,110 ("the '110 Patent")—pertains to various aspects of PTC systems and functionality for the Locomotive segment.  (D.I. 41-1, ¶¶ 16-21, 105-71.)

Though Wabtec had no substantive objection to Siemens' timely amendment, it nevertheless opposed Siemens' motion to amend to insist upon a significant extension of the case schedule to accommodate the new patents, even though Siemens' newly asserted patents related to several of the originally asserted patents.  (D.I. 43, Wabtec Ltr. Br. in Opp. to Mot. to Amend.)  The parties thereafter negotiated a proposed revised scheduling order and filed it with the Court on December 22, 2016.  (D.I. 48.)  Wabtec made no mention of its intention to assert any counterclaims for infringement of its own patents during these negotiations, and no allowance was made for such counterclaims in the scheduling order submitted to the Court.  (*Id.*; D.I. 48-1.)  On January 12, 2017, the Court entered the parties' proposed scheduling order and deemed Siemens' First Amended Complaint filed as of that date.  (D.I. 49.)

Wabtec answered Siemens' First Amended Complaint on January 26, 2017.  (D.I. 52.) As it did in its original answer, Wabtec asserted counterclaims for a declaratory judgment of invalidity and non-infringement as to each Siemens patent, but no counterclaims against Siemens for infringement of any Wabtec patent.  (*Id.*)  On February 14, 2017, ten days before Siemens' response to Wabtec's counterclaims was due, Wabtec amended its counterclaims to include for the first time its own allegations of patent infringement against Siemens.  (D.I. 56.)  Specifically, Wabtec accused Siemens of infringing U.S. Patent Nos. 7,398,140 ("the '140 Patent"), 8,175,764 ("the '764 Patent"), and 8,478,463 ("the '463 Patent"), each of which pertains to aspects of PTC functionality for the Locomotive segment.  (*Id.*, ¶¶ 8-10, 663-95.)  In support of its

counterclaims, Wabtec cited to technical documents that Siemens produced back in October 2016.

Fact discovery and this case in general are well underway, with the parties having served responses to interrogatories, produced thousands of pages of documents, and begun deposing witnesses. In addition, Siemens served its identification of accused products and damages model back in August of last year with respect to the seven patents asserted in the original Complaint (*see* D.I. 25), and amended that disclosure on February 10, 2017 to account for the additional patents asserted in its First Amended Complaint (*see* D.I. 54). On October 7, 2016, Siemens served its initial claim charts and infringement contentions for the seven originally asserted patents (*see* D.I. 40), which it amended on March 10, 2017 to include the additional patents asserted in its First Amended Complaint (*see* D.I. 63). Wabtec served its initial invalidity contentions on October 15, 2016 (*see* D.I. 46), which it is required to amend no later than April 10, 2017 to account for the additional patents in Siemens' First Amended Complaint (*see* D.I. 48-1 at 1).

On April 28, 2017, the parties are to exchange lists of claim terms requiring construction, with proposed claim constructions for the terms so identified to be exchanged two weeks later on May 12, 2017. (*Id.*) Opening claim construction briefs are due June 30, 2017, which is also the deadline for document production to be substantially completed. (*Id.* at 2.) A *Markman* hearing is set for September 5, 2017. (*Id.*) Fact discovery closes 11 months from now. (*Id.* at 3.)

## III.    STATEMENT OF FACTS

The three Wabtec patents that Wabtec recently asserted against Siemens in its amended counterclaims are unrelated to any of the 13 patents Siemens has asserted against Wabtec. There is no overlap between the six inventors named on Siemens' patents and the eight inventors named on Wabtec's patents, and obviously no overlap in terms of ownership of the patents.

4

Additionally, the Wabtec patents all relate to aspects of PTC functionality implemented in the Locomotive segment, whereas a little more than half of Siemens' asserted patents concern that segment of the PTC architecture.  There is therefore no overlap in technology between the three Wabtec patents, on the one hand, and the four Back Office- and EOT monitoring/tracking-related Siemens patents, on the other.  And even as to the nine Siemens patents that are broadly directed to PTC systems and functionality for the Locomotive segment, Wabtec concedes that each of those patents is "directed to different functionality."  (D.I. 43 at 1-2.)  Thus, even as between the Siemens and Wabtec Locomotive-related patents, the technological overlap is potentially limited.

The Siemens products accused of infringing the Wabtec patents are also different from the Wabtec products accused of infringing the Siemens patents.  First, Wabtec has not accused any Siemens End-of-Train devices of infringing any Wabtec patents.  In contrast, Siemens has asserted the '032 and '850 patents against Wabtec's EOT telemetry systems, including Wabtec's TrainLink ATX and TrainLink II 4G-ATX.  (D.I. 41-1, ¶¶ 35, 36, 76-89.)  Second, Wabtec has not accused any Siemens Back Office components of infringing any Wabtec patents.  Siemens, on the other hand, has asserted its '494 and '698 Patents against, *inter alia*, the Back Office component of Wabtec's I-ETMS system.  (D.I. 41-1, ¶¶ 32, 90-104.)  Finally, though each party has its own onboard solution accused of infringing the other's Locomotive segment related-patents, those solutions are ultimately different products proprietary to each party, consisting of multiple components.  For example, the locomotive segment of Wabtec's I-ETMS system comprises numerous components that include a Train Management Computer, an I-ETMS Display, a Commlink II Communications Manager, an Asy Cut-Out Switch, and a Navigation Sensor Module, and that are each further comprised of various subcomponents.  (D.I. 41-1, ¶ 31.) Siemens' Trainguard PTC system likewise comprises numerous components, which include a

Trainguard PTC Onboard Unit, Locomotive Messaging Server, Wheel Speed Sensor WIG 16P, and Dual GPS Receivers, and that also include further additional subcomponents. Different components of these respective systems are accused of meeting discrete limitations of different claims in different patents.

Due to the differences in claim scope among Siemens' own Locomotive segment-related patents as compared to Wabtec's, there will also be differences in the prior art asserted against Siemens' and Wabtec's patents. Indeed, Siemens' patented innovations relating to the PTC Locomotive segment significantly predate Wabtec's purported inventions. Applications for two of the three asserted Wabtec patents were filed in 2008, approximately six years later than the priority date of all nine of the Siemens Locomotive segment-related patents. Thus, any prior art dating from that six-year period (or from the shorter period separating Siemens' patents and Wabtec's '140 Patent) will by definition only apply to Wabtec's patents and not to Siemens'. Likewise, prior art asserted by Wabtec against Siemens' EOT- and Back Office-related patents is unlikely to have any relevance with respect to the validity of Wabtec's patents.

## IV. WABTEC'S INFRINGEMENT COUNTERCLAIMS SHOULD BE SEVERED FROM THIS ACTION

Rule 21 of the Federal Rules of Civil Procedure authorizes a court to "sever any claim against a party." It is well-settled that a motion for severance "is addressed to the sound discretion of the trial court." *Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409, 412 (3d Cir. 1967); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (district courts enjoy "virtually unfettered discretion in determining whether or not severance is appropriate"); *Wright & Miller*, 7 Fed. Prac. & Proc. Civ. § 1689 (3d ed.). "[A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are 'discrete and separate.'" *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 WL 6134052, at *2

(W.D. Pa. Oct. 16, 2015).  In other words, severance is appropriate where one claim is "capable of resolution despite the outcome of the other claim."  *Id.*

In deciding whether to sever a claim, courts consider the same factors taken into account when deciding whether to order separate trials, namely, "convenience of the parties, avoiding prejudice, and promoting expedition and economy."  *BancMortgage Fin. Corp. v. Guarantee Title & Trust Co.*, No. 99-cv-2932, 2000 WL 1521600, at *2 (E.D. Pa. Oct. 6, 2000) (identifying the following factors to be considered: whether the issues sought to be severed significantly differ from those that are to remain; whether the severable issues require different witness testimony and documentary proof than the remaining claims; and whether the grant or denial of severance will prejudice either party).  A court's primary concern should be whether severance is more likely to result in a just final disposition of the litigation as compared to keeping the claims in the same case.  *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

As further explained below, Wabtec's counterclaims for patent infringement are separate and distinct from Siemens' claims and should be severed to avoid overly complicating this action, confusing and burdening the jury, and unduly prejudicing Siemens.

### A.  Severance Is Appropriate Because Wabtec's Infringement Counterclaims Are Separate and Distinct from Siemens' Infringement Claims

There can be no genuine dispute that Wabtec's patent infringement counterclaims, which involve unrelated patents and different products than those at issue in Siemens' claims for patent infringement, are merely permissive and not compulsory.  *See Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992) (Robinson, J.).  Such counterclaims are "independent claim[s], one[s] that would not be barred by the doctrine of *res judicata* in a subsequent suit."  *Id.*  Indeed, each patent "gives rise to an independent and distinct legal claim or cause of action."  *Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 660 (D. Del. 2012),

*aff'd*, 746 F.3d 1344 (Fed. Cir. 2014).  Whether Wabtec infringes any asserted Siemens patent will have no bearing on the determination of whether Siemens infringes any asserted Wabtec patent, and vice versa.  Thus, because Siemens' infringement claims and Wabtec's infringement counterclaims are "capable of resolution" independently of one another, severance of Wabtec's counterclaims is appropriate.  *Karlo*, 2015 WL 6134052, at *4.

**B.    Severance Is Necessary to Avoid Unduly Complicating this Already Complex Case, and to Reduce the Risk of Jury Confusion and Burden**

This Court has on numerous occasions found it preferable to litigate patent infringement counterclaims in a separate action, even where there was some overlap with the technology involved in the original patent claims, in order to avoid unduly complicating the case and/or confusing the jury.  *See LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 12-cv-1063, D.I. 91, July 22, 2015 Hr'g Tr. at 22:3-8 (D. Del.) (Stark, C.J.) (granting request for severance because "it is just too easy to see how at every step of this case things will be more complicated and therefore probably proceed more slowly if I have what are effectively two cases, eight patents, four on each side, combined into one case," rather than two separate cases) (Exhibit B); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. 12-cv-205, D.I. 33, July 19, 2012, Hr'g Tr. at 5:5-9, 6:11-13 (D. Del.) (Andrews, J.) (treating plaintiff's patent infringement claims and defendant's patent infringement counterclaims "as two separate cases, because I'm quickly becoming convinced that you can't at the end of the day have a trial with one side saying here are my six patents and here's the other side saying here are my six patents…I have a relatively strong feeling that the confusion outweighs the efficiencies, just as a generic matter, and so in this case, too.") (Exhibit C); *Metallgesellschaft*, 143 F.R.D. at 558-59 (declining to allow patent infringement counterclaims in one action with plaintiff's patent infringement claims because doing so "would unduly complicate the intrinsically complex

factual issues at bar" and "judicial economies can be accomplished without litigating all of the disputes between these parties in one action" despite "some overlapping evidence"); *cf. Sonos Inc. v. D&M Holdings, Inc.*, No. 14-cv-1330, D.I. 100, Mar. 7, 2016 Order, ¶ 4 (D. Del.) (Andrews, J.) (severing defendants' counterclaims for patent infringement for a separate trial "consistent with the Court's practice") (Exhibit D).

Numerous courts in other districts have taken the same approach in similar situations, finding that patent infringement counterclaims are better suited to being separately litigated in their own action, even if there is some overlap with the technology at issue in the original claims. *See CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506-07 (D. Md. 1995) (severing patent counterclaims from the original patent claims despite the fact that "related processes and certain common witnesses would be involved" because any "commonality as may exist among the patents is far outweighed by the potential for jury confusion"); *General Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 114 (S.D.N.Y. 1970) (severing counterclaim for patent infringement because it was "separate and distinct" from the original patent infringement claim despite a common field of concern as "the inventions, the dates of invention, the inventors, places of invention and the ownership are all different"); *Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*, No. 07-cv-613, 2008 WL 4559703, at **2–3 (W.D. Wis. Jan. 24, 2008) (severing patent infringement counterclaim, which was "discrete and separate" from original patent infringement claim despite both patents being directed to the same technology, finding the claims to be independent from one another such that both parties could be found to infringe each other's respective patents).

As in the cases above, allowing Wabtec's patent infringement counterclaims to remain in this action would result in undue complication and jury confusion.  The "complicated legal

concepts and technologies at issue in patent infringement and validity disputes provide an ample source of confusion for juries." *Eurand Inc. v. Mylan Pharm. Inc.*, No. 08-cv-889-SLR, 2009 WL 3172197, at *1 n.4 (D. Del. Oct. 1, 2009) (Robinson, J.) That is particularly true here. Without even taking Wabtec's patent infringement counterclaims into account, this case already involves infringement of 13 different patents, directed to three related but distinct technologies. (Stmt. of Facts, *supra* at 4-5.)  In accordance with the Scheduling Order, Siemens has identified a total of 120 claims presently asserted against Wabtec, each of which constitutes a separate invention.   And each of those claims has been asserted against numerous components of Wabtec's I-ETMS system and End-of-Train devices.  (*Id.* at 5-6.)  In turn, Wabtec has attacked the validity of Siemens' patent claims on numerous grounds, including for lack of patent eligible subject matter under 35 U.S.C. § 101, lack of written description support under § 112, and lack of enablement under § 112.  Wabtec has also asserted prior art based invalidity defenses and counterclaims under 35 U.S.C. §§ 102 and 103, and is permitted to assert up to 130 prior art references or combinations of prior art against Siemens' patents.  In short, this was already a complicated case before Wabtec injected its own infringement claims against Siemens.

Attempting to resolve Wabtec's infringement counterclaims in the same case as Siemens' infringement claims would unduly complicate and delay these proceedings and risk causing unnecessary jury confusion.   Indeed, Wabtec previously complained about "the significant impact" that the six additional patents asserted in Siemens' First Amended Complaint would have on this case, despite the fact that the majority of those patents were either related to one another or to the seven patents asserted in the original Complaint, and the fact that those patents were all asserted against the same products accused of infringement in the original Complaint. (D.I. 43 at 1-2; D.I. 42 at 2-3.)  Wabtec complained that despite those overlaps, the six additional

10

Siemens patents would nevertheless likely require "different fact and expert witnesses, as well as different prior art references," new non-infringement analyses, and result in "essentially creating a patent case within a patent case."  (D.I. 43 at 2.)

The same concerns Wabtec previously expressed are amplified exponentially here, where Wabtec seeks to assert three new patents that are unrelated to the 13 patents asserted by Siemens, with different inventors, different priority dates, different specifications, different prosecution histories, and an entirely different accused product.  (Stmt. of Facts, *supra* at 4-6.)  These differences mean that resolution of Wabtec's infringement counterclaims will require different evidence, including entirely different infringement and non-infringement analyses, different validity and invalidity arguments including prior art inapplicable to Siemens' patents, different fact witnesses with little or no relevance to Siemens' claims (*e.g.*, the eight inventors of the Wabtec patents, and numerous Siemens personnel to discuss its accused products, including their functionality, marketing, and sales), different damages analyses, and possibly different expert witnesses.  (*Id.*)  Still further, keeping Wabtec's counterclaims in this action would add 3 more patents, approximately 30 additional patent claims, and 35 additional prior art references or combinations for the Court and the jury to consider (based on proposed revisions to the Scheduling Order being discussed by the parties).

It is therefore "easy to see how at every step of this case things will be more complicated and therefore proceed more slowly" if Wabtec's infringement counterclaims are not severed and this action consists "effectively of two cases, [sixteen] patents, [several] on each side, combined into one case."  (*See* Exhibit B, *LG Elecs.*, No. 12-cv-1063-LPS, D.I. 91, July 22, 2015 Hr'g Tr. at 22:3-8.)  It is equally clear that the additional patents and their concomitant specifications,

11

prosecution histories, infringement, invalidity, and damages theories would make this already complex case particularly confusing to a jury.

Although Wabtec's asserted patents relate to the same general field of technology as some of Siemens' asserted patents, the risks of jury confusion and over-complication weigh heavily against keeping Wabtec's infringement counterclaims in the same case.  Moreover, whatever minor inefficiencies at least arguably might arise from severance can be ameliorated by, for example, agreeing to use certain documents produced in this case in the severed case, and coordinating depositions of the few witnesses that may overlap in both cases.  *Metallgesellschaft*, 143 F.R.D. at 558-59 (declining to allow patent infringement counterclaims on unrelated patents where "judicial economies can be accomplished without litigating all of the disputes between these parties in one action" despite "some overlapping evidence").

Any such overlap in discovery and evidence is in any event likely to be minimal due to the significant difference in priority dates between Wabtec's patents and the Siemens patents that also concern PTC locomotive technology.   This difference will require separate claim construction inquiries from different temporal perspectives, and will significantly limit any potential overlap in prior art.   Siemens' affirmative case and Wabtec's affirmative case are otherwise entirely separate, as they concern infringement of unrelated patents—including patents directed to entirely different technology—by unrelated accused products.  Siemens will therefore require different documents and witnesses to prove its affirmative liability and damages case than Wabtec will need with respect to its counterclaims.  Thus, other than the possibility of a handful of prior art references and a technology tutorial describing the PTC Locomotive technology at a high level, any meaningful overlap in discovery or evidence between Wabtec's and Siemens' claims is unlikely.

Furthermore, notwithstanding any limited efficiencies Wabtec may argue could be gained by litigating Wabtec's infringement counterclaims in Siemens' case, doing so will only exacerbate the risk of jury confusion and burden.  The jury would undoubtedly have a difficult time keeping track of which component of whose accused Locomotive segment product is accused of performing which claimed functionality of which claimed patent, and what functionality that component actually performs.  Likewise, the jury would likely have difficulty keeping track of which prior art predates whose patents and discloses which limitations, especially where at least some of Siemens' own patents are likely to constitute prior art to Wabtec's patents.  As just one example, Wabtec now accuses Siemens of infringing its '140 Patent, which is directed to a system for alerting a train operator when it is time to activate the train's horn.  During prosecution of that patent, the examiner cited Siemens' U.S. Patent No. 6,609,049, which is the parent of one of the patents that Wabtec is accused of infringing (the '110 Patent), in support of an anticipation rejection.  While the fact that Wabtec ultimately was able to distinguish Siemens' patent has no legal relevance to whether Wabtec later infringed the related Siemens patent, it is unreasonable to expect a jury to keep such issues straight.

Severing Wabtec's infringement counterclaims is therefore the approach "most likely to result in a just final disposition of the litigation."  *In re Innotron Diagnostics*, 800 F.2d at 1084.

**C.      Siemens Will Be Unduly Prejudiced If Wabtec's Counterclaims Are Not Severed**

Severance is also necessary to prevent Siemens from the undue prejudice that it would suffer if it were required to prosecute its claims of patent infringement, initiated almost a year ago, and simultaneously defend against Wabtec's unrelated counterclaims.

As an initial matter, and as Wabtec concedes (D.I. 43 at 1), Siemens requested an aggressive schedule for its original patent case.  After Siemens asserted six additional patents in

its First Amended Complaint, the parties negotiated a revised schedule that would account for the additional patents without significantly delaying resolution of Siemens' claims. That schedule made no allowance for any patent infringement counterclaims by Wabtec, nor did Wabtec ever indicate that it intended to assert such counterclaims. Indeed, Wabtec did not assert such counterclaims either in its answer to Siemens' original Complaint (D.I. 14), or its first answer to Siemens' First Amended Complaint (D.I. 52). It was not until nine months after Siemens filed its original Complaint (D.I. 1), more than three months after Siemens filed its First Amended Complaint (D.I. 41-1), and nearly two months after the parties submitted their revised proposed scheduling order to the Court (D.I. 48) that Wabtec asserted its patent infringement counterclaims for the first time in its Amended Counterclaims (D.I. 56).

Because the present schedule did not take Wabtec's counterclaims into account, fitting those counterclaims into the current schedule is not workable and the schedule would need to be revised. Doing so at this point in time, however, would be prejudicial to Siemens as Wabtec's affirmative case is many months behind the current schedule, presenting Siemens with a veritable catch-22 of scheduling options. On the one hand, Siemens can choose to significantly push back numerous deadlines in order to accommodate Wabtec's counterclaims so that Siemens has sufficient time to defend against those counterclaims. But doing so would further delay resolution of Siemens' own claims, while allowing Wabtec an extraordinary amount of time to defend against them. On the other hand, Siemens can choose to compress the schedule for Wabtec's counterclaims so as to limit the delay to its affirmative case. But this would substantially reduce the time to which Siemens would ordinarily be entitled to defend itself against Wabtec's counterclaims, reduce Siemens' time and resources to prosecute its affirmative

case, and diminish the effectiveness of any potential IPR proceedings as a more cost-effective way of proving the invalidity of Wabtec's patents.  Either option is detrimental to Siemens.

In contrast, Wabtec cannot credibly claim that it would suffer similar prejudice if its counterclaims were severed, as it elected to wait almost a year before asserting its patents against Siemens, including several months after receiving the Siemens technical documents cited in Wabtec's counterclaims.  Likewise, nothing in Wabtec's pleading suggests there is any urgency that requires its infringement counterclaims to be decided on the same schedule as Siemens' claims.

In addition to necessitating a schedule that would prejudice Siemens, allowing Wabtec's infringement counterclaims to proceed in the same case as Siemens' infringement claims will present significant practical difficulties for both the parties and the Court.  For example, there are limits on the number of interrogatories that can be served and the hours of deposition testimony that can be taken, page limits for critical issues such as claim construction and summary judgment, and time limits for hearings and trials.  While the Court certainly has the authority to extend any or all such limits, doing so risks making the size and scope of this case prohibitively unwieldy for the Court as well as the parties.  As just one example, if Wabtec's counterclaims were to remain in this case, these limits would have to be extended to account for claim construction briefing and a corresponding *Markman* hearing that would draw from a universe of 16 patents (including their respective specifications and prosecution histories), 150 claims, and 165 prior art references.  And as noted earlier, due to the significant difference in priority dates between Siemens' and Wabtec's patents, the claim construction analysis will have to be undertaken from a different temporal perspective regardless of any limited general technological overlap between Siemens' and Wabtec's patents.  Moreover, any such overlap would only make

things more confusing, as the inventors of the Wabtec patents may have ascribed different meanings to certain terms than the inventors of the Siemens patents.  Alternatively, should the Court decline to extend briefing, hearing, and other limits in an effort to keep this case from expanding out of control, this would in turn compromise and constrain Siemens' ability to fully and fairly develop and present its infringement case against Wabtec while simultaneously defending against Wabtec's infringement claims.

In contrast, Wabtec will suffer no similar prejudice if its counterclaims are severed.  To the contrary, each party will have the freedom to prosecute and defend its respective case within the full parameters ordinarily permitted by this Court.  Severance is therefore justified.

## V.      CONCLUSION

For all of the foregoing reasons, Siemens respectfully requests that the Court grant this motion and sever Counts XXVII-XXIX of Wabtec's Amended Counterclaims from this action. To that end, Siemens presents for the Court's consideration the proposed schedule attached as Exhibit A for the newly severed action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com

OF COUNSEL:

Mark Supko
Kathryn L. Clune
Vincent J. Galluzzo
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

March 20, 2017

*Attorneys for Siemens Industry, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 20, 2017, upon the following in the manner indicated:

Steven L. Caponi, Esquire                                            *VIA ELECTRONIC MAIL*
K&L GATES LLP
600 North King Street, Suite 901
Wilmington, DE  19801
*Attorneys for Defendants*

Alan L. Barry, Esquire                                               *VIA ELECTRONIC MAIL*
Jason A. Engel, Esquire
Benjamin E. Weed, Esquire
Devon C. Beane, Esquire
Katherine L. Hoffee, Esquire
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL  60602
*Attorneys for Defendants*

*/s/ Karen Jacobs*

_____

Karen Jacobs (#2881)