## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS INDUSTRY, INC., | |
| Plaintiff, | |
| v. | C.A. No. 16-284 (LPS) |
| WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION (d/b/a WABTEC CORPORATION) and WABTEC RAILWAY ELECTRONICS, INC., | |
| Defendants. | |

## WABTEC'S OPPOSITION AND RESPONSE TO SIEMENS' MOTION TO SEVER WABTEC'S PATENT INFRINGEMENT COUNTERCLAIMS

**K&L GATES LLP**
Steven L. Caponi, Esq. (#3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Phone: 302.416.7080
steven.caponi@klgates.com

*Attorneys for Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc.*

*Of counsel:*

Alan L. Barry, Esq.
Jason A. Engel, Esq.
Benjamin E. Weed, Esq.
Devon C. Beane, Esq.
Katherine L. Hoffee, Esq.
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Phone: 312. 372.1121
alan.barry@klgates.com
jason.engel@klgates.com
benjamin.weed@klgates.com
devon.beane@klgates.com
katy.hoffee@klgates.com

Dated: April 3, 2017

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   LEGAL STANDARD...............................................................................................2

III.  ARGUMENT ...........................................................................................................3

      A.    Wabtec's Locomotive Infringement Counterclaims Are Directed To
          Related Technology, Accused Products, and Witnesses As Siemens'
          Locomotive Infringement Claims .......................................................................4

          i.    The Technology Of Wabtec's Three Locomotive Patents And
             The Relevant Prior Art References Overlap With The
             Technology Of Siemens Nine Locomotive Patents And The
             Relevant Prior Art References ..................................................................4

          ii.   The Accused Products And Witnesses For Wabtec's Locomotive
             Infringement Counterclaims Overlap With The Accused Products
             and Witnesses For Siemens Locomotive Infringement Claims.................5

      B.    Because Of The Significant Overlap, Severing Wabtec's Locomotive
          Infringement Counterclaims Would Waste Judicial Resources............................6

      C.    Wabtec Timely Filed Its Locomotive Infringement Counterclaims And
          Proposed A Slightly Revised Scheduling Order...................................................8

      D.    Siemens Will Not Be Unduly Prejudiced By Inclusion Of Wabtec's
          Locomotive Infringement Counterclaims ..........................................................10

IV.   CONCLUSION.......................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BancMortgage Fin. Corp. v. Guarantee Title & Trust Co.*,
No. 99-cv-2932, 2000 WL 1521600 (E.D. Pa. Oct. 6, 2000) ....................................................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................10

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
896 F. Supp. 505 (D. Md. 1995) ...................................................................................................7

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
167 F. Supp. 2d 955 (S.D. Tex. 2001) ........................................................................................6

*Fairchild Semiconductor Corp. v. Power Integrations Inc.*,
No. 12-cv-00540, D.I. 295 (Apr. 15, 2015 D. Del.) ...................................................................7

*Garmin Ltd. v. TomTom, Inc.*,
No. 06-c-0062, 2006 WL 3377487 (W.D. Wis. June 15, 2006)...................................................7

*General Tire & Rubber Co. v. Jefferson Chem. Co.*,
50 F.R.D. 112 (S.D.N.Y. 1970) ...................................................................................................7

*German by German v. Fed. Home Loan Mortg. Corp.*,
896 F. Supp. 1385 (S.D.N.Y. 1995).............................................................................................6

*Graudins v. Retro Fitness, LLC*,
921 F. Supp. 2d 456 (E.D. Pa. 2013) ......................................................................................2, 3

*Grigsby v. Kane*,
No. 99-2083, 2003 WL 24008976 (M.D. Pa. Mar. 19, 2003) .....................................................2

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986).....................................................................................................3

*Karlo v. Pittsburgh Glass Works, LLC*,
10-cv-1283, 2015 WL 6134052 (W.D. Pa. Oct. 16, 2015).........................................................2

*Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*,
No. 07-cv-613, 2008 WL 4559703 (W.D. Wis. Jan. 24, 2008)..................................................7

*Microsoft Corp. v. GeoTag, Inc.*,
No. 11-cv-00175, 2014 WL 4312167 (D. Del. Aug. 29, 2014), *aff'd on other
grounds*, 817 F.3d 1305 (Fed. Cir. 2016) ..................................................................................5

*Senju Pharm. Co. v. Apotex Inc.*,
    891 F. Supp. 2d 656 (D. Del. 2012), *aff'd*, 746 F.3d 1344 (Fed. Cir. 2014) ...........................5

*Spellbound Dev. Group, Inc. v. Pacific Handy Cutter, Inc.*,
    No. 09-cv-951, 2011 WL 1810961 (C.D. Cal. May 12, 2011)...................................................7

*Synopsys, Inc. v. Magma Design Automation*,
    No. 05-cv-00701, 2006 WL 1452803 (D. Del. May 25, 2006) ................................................8

*Viasat, Inc. v. Space Systems/loral, Inc.*,
    No. 12-cv-00260, 2012 WL 12844702 (S.D. Cal. Aug. 23, 2012).......................................3, 8

**Other Authorities**

Fed. R. Civ. P. 1 ........................................................................................................................6

Fed. R. Civ. P. 11 .....................................................................................................................11

Fed. R. Civ. P. 11 .....................................................................................................................11

Fed. R. Civ. P. 15(a)(1)(A) ........................................................................................................9

Fed. R. Civ. P. 21 ......................................................................................................................2

Fed. R. Civ. P. 42(b) .................................................................................................................2

Section 1689 Severance Under Rule 21, 7 Fed. Prac. & Proc. Civ. § 1689 (3d ed.).....................6

## I.    INTRODUCTION

Wabtec filed its amended counterclaims (the "Locomotive Infringement Counterclaims") after Siemens added six more patents to the present case.  Wabtec's Locomotive Infringement Counterclaims[1] are directed to the Locomotive segment of PTC technology.  As Siemens admits, nine of its Patents-in-Suit[2] are also directed to the Locomotive segment of PTC technology.  (*See* D.I. 67 at 2-3).  Hence, Wabtec's Locomotive Infringement Counterclaims are directed to the same market as nine of Siemens Patents-in-Suit.

In addition, Wabtec's Patents-in-Suit are highly related to Siemens nine locomotive patents.  For example, the specification of Wabtec's '764 Patent and '463 Patent cite as background five Siemens locomotive patents.  (D.I. 56, Ex. R at col. 1, lines 61-66; D.I. 56, Ex. S at col. 3, lines 56-61).  Wabtec's '140 Patent, which relates specifically to operator warning systems for locomotive horn activation, cites Siemens' U.S. Patent No. 6,609,049, the parent patent of Siemens' '110 Patent which is asserted in this case.  (D.I. 56, Ex. Q at col. 2, lines 1-4).  Hence, there is technology overlap between the Wabtec Patents-in-Suit and the nine Siemens locomotive patents.

The overlap also extends to the accused products.  Wabtec's Locomotive Infringement Counterclaims accuse Siemens Trainguard PTC of infringement.  Trainguard PTC is already at issue in Siemens' affirmative case because it has alleged it has suffered lost profits as to its nine locomotive patents.  In its affirmative case, Siemens accuses Wabtec's Interoperable Electronic

---

[1]   The Wabtec Patents-in-Suit are U.S. Patent Nos. 7,398,140 ("'140 Patent"); 8,175,764 ("'764 Patent"); and 8,478,463 ("'463 Patent").

[2]   The Siemens Patents-in-Suit are U.S. Patent Nos. 6,996,461 ("'461 Patent"); 7,092,801 ("'801 Patent"); 7,236,860 ("'860 Patent"); 7,467,032 ("'032 Patent"); 7,742,850 ("'850 Patent"); 8,714,494 ("'494 Patent"); 9,233,698 ("'698 Patent"); 6,978,195 ("'195 Patent"); 7,079,926 ("'926 Patent"); 7,200,471 ("'471 Patent"); 6,845,953 ("'953 Patent"); 7,036,774 ("'774 Patent"); and 6,824,110 ("'110 Patent").  The nine Siemens locomotive patents are the '461 Patent, the '801 Patent, the '860 Patent, the '195 Patent, the '926 Patent, the '471 Patent, the '953 Patent, the '774 Patent, and the '110 Patent.

Train Management System ("I-ETMS") of infringing its nine locomotive patents.  I-ETMS is the commercial embodiment of the Wabtec Patents-in-Suit.  The inventors on Wabtec's Patents-in-Suit are the developers of I-ETMS.  Thus, there is significant technology overlap between the Siemens locomotive patents, the corporate and technical witnesses overlap, and the accused products are the same.  Additionally, there is overlap with respect to prior art references that will be relied upon by Wabtec and Siemens in their invalidity defenses.  Due to this vast overlap, party and judicial resources would be wasted if Wabtec's Locomotive Infringement Counterclaims were severed from Siemens' affirmative case.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case by way of severing parties or claims.  *See, e.g.*, *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 468 (E.D. Pa. 2013); *BancMortgage Fin. Corp. v. Guarantee Title & Trust Co*., No. 99-cv-2932, 2000 WL 1521600, at *1 (E.D. Pa. Oct. 6, 2000).  "[T]he court has virtually unfettered discretion in determining whether or not severance is appropriate." *Grigsby v. Kane*, No. 99-2083, 2003 WL 24008976, at *2 (M.D. Pa. Mar. 19, 2003).  Rule 21 states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  Rule 42(b) allows a court to order that certain claims or issues be dealt with in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).

The following factors are analyzed before ordering separate trials: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Karlo v. Pittsburgh Glass Works, LLC*, 10-cv-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015)

2

(*citing Crown Cork & Seal Co. Master Ret. Trust v. Credit Suisse First Boston Corp.*, 288 F.R.D. 331, 333 (S.D.N.Y. 2013).

"Courts generally avoid separating trial, however." *Graudins*, 921 F. Supp. 2d at 468 (citing *Corrigan v. Methodist Hosp.*, 160 F.R.D. 55, 56 (E.D. Pa. 1995)). "This is because a single trial will generally lessen the delay, expense and inconvenience to the parties and the courts." *Id.* "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

## III.   ARGUMENT

Siemens would have this Court believe that adding three patents to this case, which already contains thirteen patents, is unmanageable. Siemens ignores that it expanded this case from seven patents to thirteen patents just two months ago. Wabtec's Locomotive Infringement Counterclaims are technologically interrelated to Siemens' nine locomotive patents, and deal with the same products, markets, and witnesses. Under these circumstances, severance is inappropriate and Siemens' motion to sever should be denied. *See Viasat, Inc. v. Space Systems/loral, Inc.*, No. 12-cv-00260, 2012 WL 12844702 at *2 (S.D. Cal. Aug. 23, 2012) (denying motion to sever defendant's permissive counterclaims of patent infringement because "[d]ividing this case into two cases would result in two separate lawsuits pending before this Court involving the same parties, same lawyers, and claims concerning the same technologies.").

**A.      Wabtec's Locomotive Infringement Counterclaims Are Directed To Related Technology, Accused Products, and Witnesses As Siemens' Locomotive Infringement Claims**

   **i.      The Technology Of Wabtec's Three Locomotive Patents And The Relevant Prior Art References Overlap With The Technology Of Siemens Nine Locomotive Patents And The Relevant Prior Art References**

The Wabtec Patents-in-Suit are directed to "aspects of PTC functionality implemented in the Locomotive segment," just like the nine Siemens locomotive patents. (*See* D.I. 67 at 5; *see also* 2-3). The Wabtec's Patents-in-Suit describe Locomotive segment PTC technology highly related to those nine Siemens Patents-in-Suit. In fact, in the background of the invention section of Wabtec's '764 Patent and '463 Patent, five Siemens Patents-in-Suit (the '461 Patent, the '860 Patent, the '953 Patent, the '774 Patent, and the '110 Patent) are cited. These five Siemens patents are directed to Locomotive segment PTC technology, just like the Wabtec Patents-in-Suit. In the background of the invention section of Wabtec's '140 Patent, Siemens' U.S. Patent No. 6,609,049, the parent patent of Siemens' '110 Patent, is discussed. Wabtec's '140 Patent and Siemens' '110 Patent both relate to locomotive horn activation.

The overlap does not end there. Siemens and Wabtec rely on some of the same prior art for their respective invalidity cases. (*Compare* D.I. 64 at 82-83, *with* D.I. 56 at 101, 103, 105). In Siemens' invalidity counterclaims, Siemens used the parent of the '110 Patent, U.S. Patent No. 6,609,049 ("'049 Patent"), combined with the RSAC Report, as an invalidity defense as an invalidity defense. (*See* D.I. 56 at 82-83). Wabtec's also relies on the RSAC in its invalidity defense since it gives a detailed overview of PTC developments and projects over the years. Despite the clear overlap of the technology and prior art references, Siemens claims that the "three Wabtec patents . . . are unrelated to any of the thirteen patents Siemens has asserted against Wabtec." (D.I. 67 at 4).

4

Siemens argues that "[e]ach patent, not patent claim, gives rise to an independent and distinct legal claim or cause of action." *Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 660 (D. Del. 2012), *aff'd*, 746 F.3d 1344 (Fed. Cir. 2014). Siemens' citation to *Senju* is out of context. The *Senju* court analyzed the issue of claim preclusion in patent infringement cases, not how to decide whether each cause of action could or should be litigated separately. Additionally, Siemens mistakenly relies on cases discussing permissive verses compulsory counterclaims as support for why Wabtec's Locomotive Infringement Counterclaims should be severed. (*See* D.I. at 7-8). These cases similarly fail to support Siemens' cause. Under Siemens' view, any permissive counterclaim should be severed just because it can be resolved separately. That is not the law. *See Microsoft Corp. v. GeoTag, Inc.*, No. 11-cv-00175, 2014 WL 4312167, at *4 (D. Del. Aug. 29, 2014), *aff'd on other grounds*, 817 F.3d 1305 (Fed. Cir. 2016) (finding "Third Circuit law allows for subject matter jurisdiction over permissive counterclaims" and that it is within the court's discretion to entertain such a permissive counterclaim).

> ### ii. The Accused Products And Witnesses For Wabtec's Locomotive Infringement Counterclaims Overlap With The Accused Products and Witnesses For Siemens Locomotive Infringement Claims

Siemens accuses Wabtec's positive train control product I-ETMS of infringing its nine locomotive patents. I-ETMS is the commercial embodiment of Wabtec's Patents-in-Suit. Similarly, Wabtec is accusing Siemens' positive train control product, Trainguard PTC, of infringing its three locomotive patents. Trainguard PTC is the commercial embodiment of Siemens' nine locomotive patents.

Siemens may rely on secondary considerations of non-obviousness associated with Trainguard PTC to rebut Wabtec's invalidity challenges to the nine Siemens locomotive patents. Likewise, Wabtec may also rely on secondary considerations of non-obviousness associated with I-ETMS to rebut any Siemens' invalidity challenges to the Wabtec Patents-in-Suit.

Discovery on each of the accused products will also be relevant for each parties lost profits calculations.  Wabtec expects Siemens to take the position that Trainguard PTC embodies the nine locomotive patents that Siemens is seeking damages in the form of lost profits.  For Wabtec's lost profits analysis, I-ETMS embodies its three locomotive patents.

If the cases are severed, corporate and technical witnesses for Siemens that have knowledge of Trainguard PTC will have to be deposed in Siemens' affirmative infringement case, and then again for Wabtec's Locomotive Infringement Counterclaims.  The same will be true for Wabtec's corporate and technical witnesses that have knowledge of I-ETMS.  Finally, the inventors of Wabtec's Patents-in-Suit are the developers of I-ETMS and hence will be witnesses in Wabtec's Locomotive Infringement Counterclaims and Siemens' affirmative case. Wabtec has already added the inventors of Wabtec's Patents-in-Suit to its amended initial disclosures, served on March 9, 2017.  (*See* D.I. 62).

**B.      Because Of The Significant Overlap, Severing Wabtec's Locomotive Infringement Counterclaims Would Waste Judicial Resources**

Severance of Wabtec's Locomotive Infringement Counterclaims will not streamline this litigation.  Rather, if the Court severs Wabtec's Locomotive Infringement Counterclaims, the litigation will lengthen, the costs will increase, and the likelihood of inconsistent results will grow.  *See, e.g.*, *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995); *see also El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960 (S.D. Tex. 2001); Section 1689 Severance Under Rule 21, 7 Fed. Prac. & Proc. Civ. § 1689 (3d ed.) ("[S]everance will be refused if the court believes that it only will result in delay, inconvenience, or added expense.").  Siemens' argument for severing Wabtec's Locomotive Infringement Counterclaims effectively asks this Court to ignore its duty "to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.

In support of its motion, Siemens cites a hearing transcript where this Court discussed a case involving infringement claims on both sides as "probably proceeding more slowly." (D.I. 67 at 8 (quoting Ex. B)). Wabtec has not proposed a slow case schedule. Rather, Wabtec has proposed a schedule that is just as aggressive for its Locomotive Infringement Counterclaims as Siemens previously proposed for its infringement claims.

Numerous courts, including this Court, have allowed cases to proceed with both sides asserting claims of patent infringement. *See, e.g.*, *Fairchild Semiconductor Corp. v. Power Integrations Inc.*, No. 12-cv-00540, D.I. 295 at 5 (Apr. 15, 2015 D. Del.) (Stark, C.J.) (denying motion to sever and stay one patent involved in reexamination proceedings, and allowing the eight-patent case to proceed, where four patents were asserted by plaintiff and four patents were counterclaimed by defendants) (Exhibit A); *Spellbound Dev. Group, Inc. v. Pacific Handy Cutter, Inc.*, No. 09-cv-951, 2011 WL 1810961, at *4 (C.D. Cal. May 12, 2011) (denying plaintiff's motion to sever defendant's counterclaim of patent infringement because "[t]wo separate trials will be unduly consumptive of the Court's and the parties' resources, and will prejudice PHC in forcing it to conduct two trials."); *Garmin Ltd. v. TomTom, Inc.*, No. 06-c-0062, 2006 WL 3377487 at *1 (W.D. Wis. June 15, 2006) (denying motion to stay or sever defendant's permissive counterclaims).[3] Allowing a plaintiff to sever a defendant's permissive counterclaims of patent infringement would result in two separate lawsuits "involving the same parties, same lawyers, and claims concerning the same technologies," thus increasing the cost

---

[3]   Siemens cited authority fails to support its motion. For instance, in *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, the court found it significant that the counterclaim involved only one of the four plaintiffs, and that four parties in the current litigation had "no interest in the Second Counterclaim at all." 896 F. Supp. 505, 507 (D. Md. 1995). In *General Tire & Rubber Co. v. Jefferson Chem. Co.*, the court was far more persuaded by the existence of virtually identical proceedings going on in the District of Delaware, and transferred the counterclaim to that venue. 50 F.R.D. 112, 115 (S.D.N.Y. 1970). Like *General Tire*, the court in *Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*, used severance as an avenue to transfer the case to another venue in which a far more similar proceeding was already pending. No. 07-cv-613, 2008 WL 4559703, at 3* (W.D. Wis. Jan. 24, 2008).

and burden on the parties and the Court.  *Viasat, Inc.*, 2012 WL 12844702, at \*2.  Combining

Wabtec's Locomotive Infringement Counterclaims and Siemens' claims into one lawsuit

promotes efficiency and convenience.

Siemens also argues that keeping Wabtec's Locomotive Infringement Counterclaims in

the present litigation is "unduly complicating the case," and that the jury will be confused.  (D.I.

67 at 8).  It is clear that Siemens' is asking the Court to "pre-judge the yet-unnamed jurors by

assuming they are unable to digest the facts and law in this case."  *See Synopsys, Inc. v. Magma*

*Design Automation*, No. 05-cv-00701, 2006 WL 1452803, at \*4 (D. Del. May 25, 2006) (Sleet,

J.) (denying motion to bifurcate defendant's antitrust claims from the plaintiff's patent

infringement claims).  Wabtec, confident in its ability to "craft cogent presentations to aid the

jury" and sharing Judge Sleet's confidence in the jurors of this district as discussed in *Synopsys*,

respectfully request Siemens' motion to sever Wabtec's Locomotive Infringement Counterclaims

be denied.  Separate trials would only serve to waste resources.

### C.     Wabtec Timely Filed Its Locomotive Infringement Counterclaims And Proposed A Slightly Revised Scheduling Order

Siemens filed its original complaint on April 21, 2017, alleging infringement of seven

patents.  Siemens pushed for an aggressive schedule, despite having additional patents in its back

pocket that it intended to add to the case.  Without this knowledge, Wabtec largely agreed to

Siemens' proposal, but requested additional time for discovery due to the number of asserted

patents, and for claim construction, expert discovery, and trial to be moved out by a few months.

To keep the case moving towards quick resolution, Wabtec proposed moving up the dates for its

production of core technical documents to give Siemens additional time to complete its initial

infringement contentions.  Wabtec also requested additional narrowing of the asserted claims

(from 70 to 49) before claim construction.  Siemens did not want to limit its case even though it

wanted an aggressive case schedule.

Siemens received Wabtec's core technical documents on August 29, 2016.[4]  Wabtec received Siemens' first (and only) production of responsive documents on October 24, 2016, which contained some technical documents related to Siemens' Trainguard PTC.  Siemens has not produced any additional documents to date except for file histories of the Siemens Patents-in-Suit.

More than two months after receiving Wabtec's core technical documents and eight months after filing its complaint, Siemens moved to amend its original complaint and add *six more patents* to the case.  (*See* D.I. 41).[5]  Wabtec initially opposed the motion since Siemens refused to agree to an extension to the already aggressive scheduling order to accommodate the six new patents.  (*See* D.I. 43 at 1-2).  After later discussions, Siemens agreed to the requested extensions and the parties filed a proposed Amended Schedule on December 22, 2016.  (*See* D.I. 48).

Wabtec filed its answer to Siemens' amended complaint on January 26, 2017, and just 18 days later, Wabtec filed its Locomotive Infringement Counterclaims alleging infringement of the three Locomotive segment patents by Siemens' Trainguard PTC System.  (*See* D.I. 56).  Wabtec's amendment was explicitly permitted under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.  The Scheduling Order also contemplated amendments to the pleadings up to August 4, 2017.  (*See* D.I. 49).  Siemens answered Wabtec's Locomotive Infringement Counterclaims and counterclaimed invalidity of the Wabtec Patents-in-Suit on March 14, 2017.  (*See* D.I. 64).  Wabtec is due to answer Siemens' counterclaims on April 4, 2017.

---

[4]  Wabtec produced additional technical documents relating to the telemetry products on September 29, 2016, however, these additional documents are irrelevant to Siemens' Amended Complaint since the six additional patents relate to the I-ETMS segment.

[5]  Siemens has not denied that it knew about the six additional patents before it filed the original complaint, and that it reviewed Wabtec's production of core technical documents specifically with an eye towards confirming the six additional patents added in the Amended Complaint could be asserted in this case.  (*See* D.I. 43 at 2 and D.I. 44).

Wabtec proposed a reasonable 2-3 month extension in order to accommodate the three new patents, which relate to similar technology as the nine locomotive patents Siemens asserts against Wabtec. Siemens, however, sought to sever Wabtec's counterclaims, proposing a schedule that would lead to an April 2019 trial. In its motion to sever, much to Wabtec's surprise, Siemens proposed a schedule that would lead to an August 2019 trial, thus putting the trial of Wabtec's Locomotive Infringement Counterclaims *seven months* after the trial on Siemens' Patents-in-Suit.

To justify its request for severance and a protracted schedule, Siemens touts that "fact discovery and this case in general are well underway." (D.I. 67 at 4). Siemens greatly overstates the status of this case. The only witness to be deposed so far was a Wabtec 30(b)(6) witness that sat for a brief deposition related to Wabtec's telemetry products. And, as mentioned above, there has been only a single round of document productions from Siemens.

### D. Siemens Will Not Be Unduly Prejudiced By Inclusion Of Wabtec's Locomotive Infringement Counterclaims

Siemens' claim that it will be unduly prejudiced if "it were required to prosecute its claims of patent infringement, initiated almost a year ago, and simultaneously defend against Wabtec's unrelated counterclaims" is specious given that Siemens itself doubled the scope of this case in November. (*See* D.I. 67 at 13). Further, even if the claims are severed, Siemens will still have to defend against Wabtec's Locomotive Infringement Counterclaims at the same time this case proceeds through discovery.

The timing for Wabtec's filing of its Locomotive Infringement Counterclaims is not unreasonable given the abrogation of Rule 84 of the Federal Rules of Civil Procedure and elimination of Form 18, which ensures that significant preparation and evaluation goes into a patent infringement lawsuit. No longer can parties simply plead patent infringement without providing "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). Wabtec took an appropriate amount of time to evaluate Siemens' documentation and Trainguard PTC to make a determination that they infringe Wabtec's Patents-in-Suit and draft a pleading detailing the infringement.

Siemens next argues that "Wabtec [n]ever indicated that it intended to assert such counterclaims." (*See* D.I. 67 at 14). But Wabtec filed its claims as soon as it determined that it had a Rule 11 basis to do so. (*See* Fed. R. Civ. P. 11). Siemens produced its only round of documents, which included some technical documents on Trainguard PTC, on October 24, 2016. Wabtec diligently reviewed the Trainguard PTC documents, but anticipated additional productions from Siemens which have yet to come. Taking just over three months to analyze Siemens' technical documents against Wabtec's entire patent portfolio is more than reasonable, especially since Siemens took almost the same amount of time to add six additional patents to the case.

Siemens also argues that there will be "significant practical difficulties for both the parties and the Court" if Wabtec's Locomotive Infringement Counterclaims are not severed. (*See* D.I. 67 at 15). Siemens then cites to "limits on the number of interrogatories that can be served and the hours of deposition testimony that can be taken, page limits for critical issues such as claim construction and summary judgment, and time limits for hearings and trials." (*Id*.). However, Siemens never tried to negotiate a new proposal for many of these items which were initially at the discretion of the parties. Instead, Siemens went ahead with filing its motion to sever. Siemens also tries to blame Wabtec's three new patents for the large universe of claims that will be part of the Markman hearing. (*Id*.). Wabtec proposed an additional narrowing of asserted claims prior to claim construction briefing for this very reason, but Siemens was not willing.

Siemens is simply trying to penalize Wabtec for the aggressive schedule ***Siemens proposed*** and stood behind even after almost doubling the number of asserted patents. Wabtec's

proposed schedule moves trial out by just two months and entirely eliminates the need for a second trial with the same parties and involving the same technology.  (*See* D.I. 68).  Wabtec's proposed schedule reasonably gives Siemens the same amount of time for preparing initial invalidity contentions on three patents as Siemens gave Wabtec regarding six patents.  Siemens' alleged "prejudice" is a product of its own unreasonableness in scheduling from the inception of this case.

## IV.    CONCLUSION

For the reasons stated above, Siemens' Motion to Sever Defendants' Patent Infringement Counterclaims should be denied.

Dated:  April 3, 2017                                      **K&L GATES LLP**

/s/ Steven L. Caponi
Steven L. Caponi, Esq. (#3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Phone: 302.416.7080
steven.caponi@klgates.com

-and-

Alan L. Barry, Esq.
Jason A. Engel, Esq.
Benjamin E. Weed, Esq.
Devon C. Beane, Esq.
Katherine L. Hoffee, Esq.
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602
Phone: 312. 372.1121
alan.barry@klgates.com
jason.engel@klgates.com
benjamin.weed@klgates.com
devon.beane@klgates.com
katy.hoffee@klgates.com

*Attorneys for Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on April 3, 2017 to all counsel of record via email.


Respectfully submitted,


By:      /s/  Steven L. Caponi
         Steven L. Caponi (# 3484)