# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION and FAIRCHILD (TAIWAN) CORPORATION, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 12-540-LPS |
| POWER INTEGRATIONS, INC., | : : : | |
| Defendant. | : : : | |

---

John G. Day, Lauren E. Maguire, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE.

Blair M. Jacobs, Christina A. Ondrick, PAUL HASTINGS LLP, Washington, D.C.

> Attorneys for Plaintiffs.

William J. Marsden, Jr., Joseph B. Warden, Jr., FISH & RICHARDSON P.C., Wilmington, DE.

Frank E. Scherkenbach, FISH & RICHARDSON P.C., Boston, MA.

Howard G. Pollack, Michael R. Headley, FISH & RICHARDSON P.C., Redwood City, CA.

> Attorneys for Defendant.

---

## **MEMORANDUM OPINION**

**UNSEALED ON**
**APRIL 20, 2015**

April 15, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the following motions:

1.     Power Integrations' Motion to Sever and Stay Fairchild's Claims Regarding the '972 Patent (D.I. 187);

2.     Fairchild's Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Partial Summary Judgment that Preclusion Law Bars Power Integrations From Re-Litigating the Validity and Direct Infringement of Claims 6, 7, 18 and 19 of U.S. Patent No. 7,259,972 (D.I. 190);

3.     Fairchild's Motion for Summary Judgment (D.I. 193); and

4.     Power Integrations' Motion for Summary Judgment (D.I. 196).

In this Memorandum Opinion, the Court addresses and resolves the first motion, deciding not to sever and stay proceedings with respect to the '972 patent.  With respect to the preclusion issues, the Court resolves certain disputes, but needs further assistance from the parties before it can determine if resolution of these disputes also resolves some or all of Fairchild's motion. Both parties' summary judgment motions raise multiple issues (eight from Fairchild and five from Power Integrations).  Here the Court only resolves the parties' disputes regarding whether Fairchild's '915 patent is prior art to Power Integrations' asserted '457 patent (as well as a portion of Power Integrations' seeking summary judgment relating to literal infringement of the '972 patent, which Fairchild does not oppose).[1]

_____

[1]Several other grounds presented in the summary judgment motions may at least arguably be impacted by recent decisions from the Special Master.  (*See, e.g.*, D.I. 269, 270, 274, 281) Pursuant to a schedule proposed by the parties, objections to certain of these decisions are still being briefed.  (*See* D.I. 278, 286-90)

## I.   BACKGROUND

On May 1, 2012, Plaintiffs Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation (collectively, "Fairchild" or "Plaintiffs") filed a complaint against Power Integrations, Inc. ("Power Integrations" or "PI" or "Defendant") alleging infringement of U.S. Patent Nos. 7,525,259 ("the '259 Patent"), 7,259,972 ("the '972 Patent"), 7,616,461 ("the '461 Patent"), and 7,286,123 ("the '123 Patent"). (D.I. 1)  On June 21, 2012, Power Integrations counterclaimed against Fairchild, alleging infringement of U.S. Patent Nos. 6,229,366 ("the '366 Patent"), 7,876,587 ("the '587 Patent"), 8,115,457 ("the '457 Patent"), and 7,995,359 ("the '359 Patent").

Fact and expert discovery are complete and trial will begin on May 26, 2015.  The Court heard oral argument on the pending motions on March 3, 2015.  (*See* D.I. 292 ("Tr."))

## II.   LEGAL STANDARDS

### A.   Motion to Sever and Stay

Whether or not to stay litigation pending reexamination by the PTO of the patents-in-suit is a matter left to the Court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998).  In exercising this discretion, the Court must weigh the competing interests of the parties. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  The factors typically considered are: (1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See St. Clair Intellectual Prop. v. Sony Corp.*, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003).

## B.    Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c), alleging a failure to state a claim upon which relief can be granted, is analyzed under the

same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of Virgin Islands*, 938

F.2d 427, 428 (3d Cir. 1991). Federal Rule of Civil Procedure 12(b)(6) permits a court to

dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A

motion to dismiss requires a court to accept as true all material allegations of the complaint. *See*

*Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In*

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). Thus, a court may

grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as

true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."

*Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

The Court may consider matters of public record, and authentic documents upon which

the complaint is based if attached to the complaint or as an exhibit to the motion. *See Oshiver v.*

*Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). The Court may also

take judicial notice of the factual record of a prior proceeding. *See Oneida Motor Freight, Inc. v.*

*United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988). Ultimately, a motion for judgment on

the pleadings can be granted "only if no relief could be afforded under any set of facts that could

be proved." *Turbe*, 938 F.2d at 428.

## B.    Motion for Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation mark omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine

4

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. PI's Motion to Sever and Stay Fairchild's Claim Regarding the '972 Patent (D.I. 187)

PI argues that Fairchild's claim regarding the '972 patent should be severed and stayed because all of the asserted claims have been finally rejected by the Examiner, and Fairchild is currently appealing this final rejection to the PTAB. PI further argues that "[t]he parallel appeal in [*Fairchild Semiconductor Corp. v. Power Integrations Inc.*, C.A. 08-309-LPS (D. Del., filed May 23, 2008) (hereinafter "*Fairchild II*")] . . . will be addressing at least the issues of the proper construction of the '972 patent claims, the finding of infringement under the doctrine of equivalents and the question of obviousness based on the prior art relied upon during the prior trial." (D.I. 188 at 10)

In evaluating PI's stay motion, the Court first considers whether the issues for trial will be

simplified by a stay. It is undisputed that the relevant issues have substantial overlap with the inter-partes reexamination and *Fairchild II*, but the significance of this overlap in the particular context of this case is less certain, given that Fairchild's preclusion motion remains pending before the Court. Thus, the only issue that would certainly be simplified for trial by a stay would be the issue of induced infringement of the '972 patent. PI argues that "[g]iven the issue of intent related to inducement, as well as the potential similarities in the invalidity case and the concurrent reexaminations, there will no doubt be disputes between the parties as to the admissibility of evidence associated with the prior and parallel related proceedings." (D.I. 188 at 9 n.2) However, some of these disputes may anyway be avoided by the Court's rulings on preclusion. Moreover, even if the Court were to grant the requested stay, the LinkSwitch-II products, which are accused of also infringing the '259 patent, would remain in the case (unless PI prevails on its motion for summary judgment of invalidity of the '259 patent); and "the jurors and the Court will need to understand the full details of the '972 patent to resolve the parties' invalidity dispute on the '259 patent" (D.I. 222 at 8). Additionally, because the '972 patent is but one of eight patents asserted in this case, the simplification to be gained from the stay, while not negligible (a seven-patent case is somewhat less involved than an eight-patent case), is not overwhelming. In short, the simplification factor favors a stay, but only slightly.

The second factor considers the status of litigation, including whether discovery is complete and a trial date has been set. Here, discovery was completed earlier this year and trial is scheduled to begin in approximately six weeks, on May 26, 2015. (*See* D.I. 222 at 5) Accordingly, the second factor weighs strongly against the requested stay.

The third factor considers whether either the non-movant would suffer undue prejudice

from delay or the movant would gain a clear tactical advantage as a result of the stay. After considering all of the parties' prejudice arguments, the Court concludes that the requested stay would unduly prejudice Fairchild. The Court is not persuaded by PI's contention that because the Court already found that Fairchild could not meet its burden of showing irreparable harm to support a permanent injunction in *Fairchild II* (*see Fairchild II*, D.I. 792 at 136), Fairchild cannot possibly be unduly prejudiced by a delay. As Fairchild emphasizes, the appeals process following the Examiner's final rejection is likely to take years, making it more likely that key witnesses will become unavailable or their memories will fade, and that the accused products will become obsolete in the market. (*See* Tr. at 54-55) Most of the other considerations the parties posit – such as PI's delay in filing its inter-partes reexamination request until after Fairchild initiated this lawsuit, which was four years after the '972 patent was first asserted against PI in *Fairchild II* (*see* D.I. 223, Ex. C at 70), which disfavors a stay, coupled with PI's lack of delay in requesting a stay shortly after the Patent Office issued its Right of Appeal notice on December 10, 2014 (*see* D.I. 189, Ex. A at 21) and Fairchild's filing of its Notice of Appeal on January 12, 2015 (*see* D.I. 189, Ex. B at 2), which favors a stay; the fact that all asserted claims of the '972 patent stand finally rejected on reexamination (*see generally* D.I. 189, Ex. A) and the low statistical likelihood of Fairchild obtaining success on appeal (*see* D.I. 189, Ex. C at 10), both favoring a stay, weighed against the fact that these parties are fierce competitors who have been litigating against one another in multiple fora for over a decade, which disfavors a stay – essentially counterbalance one another. Overall, then, the prejudice factor disfavors a stay, although only slightly.

When all the factors are weighed together, the Court concludes that PI's requested stay is

not warranted.  While a stay would minimally simplify the case set for trial, it would also unfairly prejudice Fairchild.  The most prominent and weighty factor under the circumstances is that discovery is completed and the parties and the Court are preparing for trial, which will begin in about six weeks.  Under the totality of the circumstances, the Court concludes that the appropriate exercise of its discretion is to deny PI's motion to sever and stay.

**B.    Fairchild's Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Partial Summary Judgment that Preclusion Law Bars PI From Re-Litigating the Validity and Direct Infringement of Claims 6, 7, 18 and 19 of the '972 Patent (D.I. 190)**

Fairchild argues that it is entitled to judgment on the pleadings (or alternatively summary judgment) that preclusion law bars PI from re-litigating the validity and direct infringement of the '972 patent by the LinkSwitch-II products in a power supply with a transformer, because these questions were already decided in *Fairchild II*, which resulted in a jury verdict and entry of final judgment of (1) infringement under doctrine of equivalents and (2) no invalidity.  (*See* D.I. 202, Ex. 19 at 10, 13 (*Fairchild II* jury verdict); *Fairchild II*, D.I. 819 (order entering final judgment))  Fairchild further argues that PI has effectively conceded at least part of this motion by filing its own motion to preclude Fairchild from re-litigating *literal* infringement of the '972 patent.  PI responds that here, unlike in its narrower motion, the claims and issues are sufficiently different to defeat preclusion.

**1.    Claim Preclusion**

Claim preclusion applies if there is: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or those in privity with them; and (3) a subsequent suit based on the same cause of action.  *See Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576

(Fed. Cir. 1989); *see also CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

In applying the policies expressed by the doctrine of claim preclusion, the Federal Circuit "has identified certain significant factors to be considered in determining whether a cause of action is the same" in a current and a prior case. *Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014). Among these factors are "the transactional facts from which [the cause of action] arises, and the extent of the factual overlap" between the two cases. *Id.* At least when the issue is whether claim preclusion applies to a cause of action for patent infringement (as opposed to patent invalidity), determining whether a cause of action is the same as that which was or could have been previously litigated requires the Court to consider: (1) whether the accused products are "essentially the same" and (2) whether the patent claims being asserted are the same or substantially the same. *See id.* at 1348-49.

Claim preclusion applies even when a particular claim was not actually litigated but could have been raised in the prior proceeding. *See Bd. of Trs. of Trucking Emps. of N.J. Welfare Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). The proponent of claim preclusion has the burden of showing that the requirements are met. *See Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (1983).

### 2. Issue Preclusion

Issue preclusion applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

### 3.    Application of Preclusion Principles

It appears that Fairchild is seeking to apply claim preclusion only to preclude PI from litigating the validity of Fairchild's '972 patent. It further appears that Fairchild is seeking to apply issue preclusion to preclude PI from litigating both the validity of Fairchild's '972 patent as well as the direct infringement component of Fairchild's burden to prove induced infringement of its '972 patent. The apparently differing scope of Fairchild's attacks under the two doctrines seems to complicate the analysis. Further complicating the situation is that it is unclear whether, for preclusion purposes, infringement and validity can be entirely separated.[2]

Given these complexities, the Court, regrettably, is not yet in a position to resolve Fairchild's motion. However, the Court has been able to discern two disputes presented by the motion, and will resolve those disputes here. The parties will have to advise the Court as to how the resolution of these two disputes impacts whether the Court should grant or deny Fairchild's motion as to claim and/or issue preclusion with respect to infringement and/or validity.

The first dispute the Court resolves is whether the accused products in the instant case are

---

[2]The Federal Circuit has explained:

> [a]n assertion of invalidity of a patent by an alleged infringer is not
> a "claim" but a defense to the patent owner's "claim." The acts of
> obtaining an invalid patent alone create no legal right of remedy in
> another. While defenses to a "claim" are extinguished by
> application of the doctrine of claim preclusion, the facts related to
> the defense to do not in themselves constitute the "claim."
> Similarly, that the issues of invalidity and enforceability are raised
> in a declaratory action does not change what is the "claim."

*Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479 (Fed. Cir. 1991) (internal citations omitted).

"essentially the same" as those that were accused of infringement in *Fairchild II*.[3] The Court is persuaded by Fairchild that the accused products are "essentially the same."

PI argues that because its products were only found to infringe in *Fairchild II* in power supplies with transformers (*see* D.I. 202, Ex. 20 at 9-10 (JMOL opinion in *Fairchild II* explaining that Fairchild had presented sufficient evidence to support finding of direct infringement by LinkSwitch-II in power supplies with transformers)), Fairchild must show that the power supplies involved in this case are the same as the power supplies involved in *Fairchild II*, adding that Fairchild has failed to do so (*see* Tr. at 16-17). On this point, the Court agrees with Fairchild that differences between the power supplies accused in this case and the power supplies accused in *Fairchild II* do not render the accused products something other than essentially the same. Merely "[c]olorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action." *Foster*, 947 F.2d at 480.

As Fairchild explains, the experts in both *Fairchild II* and the present case have never disputed that the LinkSwitch-II products are incorporated into power supplies using transformers. (*See* Tr. at 28-29) Power has not argued that these power supplies do not infringe based on any reason other than that Power asserts its LinkSwitch-II products do not infringe. (*See id.*)

This is reflected in the Court's JMOL opinion in *Fairchild II*, which stated: "Power does not dispute that its products are regularly incorporated into power supplies that include

---

[3]The Court does not decide here whether the accused products in the instant case are "identical" to the accused products in *Fairchild II*. The parties will need to advise the Court whether, in light of what the Court has decided, there is a dispute on this point and, if so, whether and how the Court should resolve it.

transformers. Fairchild has also offered circumstantial evidence [supporting this fact] . . . including Power's application notes containing detailed instructions for incorporating the accused product into power supplies." (D.I. 202, Ex. 20 at 9; *see also id.* (Court explaining in its JMOL opinion in *Fairchild II* that Fairchild "offered substantial evidence to support a direct infringement verdict" because "Fairchild's expert presented testimony describing the presence of a transformer in power supplies that incorporate the accused LinkSwitch-II products," "Power does not dispute that its products are regularly incorporated into power supplies that include transformers," and "Power's application notes contain[] detailed instructions for incorporating the accused product into power supplies")) Similarly, in the context of literal infringement, the Court noted that "[a]t trial, only one issue was in dispute: whether the accused products include a 'second feedback signal'" (*id.* at 18) – *not* also (or instead) whether the LinkSwitch-II products are incorporated into power supplies using transformers.

Because Fairchild has dropped its allegations against PI products that were not involved in *Fairchild II* (*see* Tr. at 10; D.I. 220 at 7 n.2; D.I. 235 at 2), the only relevant changes to the accused products would be changes to the LinkSwitch-II products themselves. PI concedes there has not been any change in the LinkSwitch-II products since *Fairchild II.* (*See* D.I. 197 at 28 (PI contending that only product difference between this case and earlier case is "the addition of new part numbers for LinkSwitch-II parts with *identical accused circuitry*") (emphasis added); *see also* D.I. 192, Ex. E at 59 (PI's Rule 30(b)(6) witness stating, "[w]e have not made any changes" to LinkSwitch-II product'"); D.I. 192, Ex. F at 261 (PI's expert similarly confirming, "as far as I know, that's all the same")) Hence, Fairchild has met its burden to show that the accused products in the instant case are essentially the same as the accused products that were involved in

12

*Fairchild II.*

The second dispute the Court resolves is whether the patent claims are substantially the same here as they were in *Fairchild II.* PI argues that it "could not have brought a defense of invalidity against Fairchild's *present* claim of infringement because Fairchild's present claim of infringement is directed to claims that have been altered since *Fairchild II* based on Fairchild's actions in litigation and before the PTO." (D.I. 220 at 6) To this end, PI argues that Fairchild (in trying to preserve the validity of another patent) has changed its position with regard to the highly "accurate" and "tight" primary-side constant current control of the '972 patent. PI further contends that "during the PTO reexamination proceedings on the '972 patent, Fairchild disclaimed use of a current limit comparator as being within the scope of the 'second feedback signal' limitation in claims 1 and 15, from which all asserted claims depend," resulting in an additional claim construction in the instant case that had the effect of narrowing the scope of the patent claims. (*See* D.I. 87 at 5-6 (modifying construction of "second feedback signal" from "a second feedback signal, distinct from the first feedback signal, associated with a current control loop" to "a second feedback signal, distinct from the first feedback signal, associated with a current control loop *wherein the current control loop does not use a current limit comparator*") (emphasis added)) PI adds that the existence of a new factual dispute with regard to the "sampling" limitation in claims 6 and 18 defeats claim preclusion.

The Court concludes that Fairchild has shown that the scope of the asserted claims of the '972 patent are substantially the same here as they were in *Fairchild II.* PI's contention that Fairchild's purportedly changed position regarding the highly "accurate" and "tight" primary-side constant current control of the '972 patent does not provide a basis for finding that the asserted

13

claims are something other than substantially the same. PI has identified no "unambiguous disavowal" of claim scope in this respect subsequent to *Fairchild II*. *See Grober v. Mako Prods.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012).

Moreover, the Court's new construction in the instant case of the "second feedback signal" term does not amount to a material difference, so it does not result in the scope of the claims asserted here being something other than substantially the same as it was in *Fairchild II*. *See Senju Pharm.*, 746 F.3d at 1353 ("[I]n the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created. This applies whether the judgment in the original suit was based on invalidity of the claims or simply on non-infringement."). As Fairchild observes, PI itself has admitted – in arguing its own preclusion motion – that the new claim construction in this case is "minor." (D.I. 197 at 28)

Consistent with this characterization, PI's technical expert, Dr. Kelley, does not appear to rely on the new portion of the Court's new construction for his non-infringement opinion. (*See* D.I. 192, Ex. D at 126-28 (reciting Court's full new claim construction – "a second feedback signal, distinct from the first feedback signal, associated with a current control loop ***wherein the current control loop does not use a current limit comparator***" (emphasis added) – but opining only that "LinkSwitch-II does not have a second feedback signal, distinct from the first feedback signal, associated with a current control loop," thereby seemingly not basing opinion on the new portion of the construction); *see also* D.I. 191 at 8 (Fairchild arguing that, "[i]n this case, PI reasserts the same non-infringement defenses [it advocated in *Fairchild II*]. . . ."))

14

Finally, the Court agrees with Fairchild that even if a new factual dispute existed with respect to the "sampling" limitation, this would not defeat claim preclusion. As Fairchild points out, the Court's claim construction in this case maintained the same construction for the "sampling" limitation that was adopted in *Fairchild II.* The scope of claims 6 and 18 as consistently construed by this Court has not changed.

As indicated above, the Court will direct the parties to advise the Court as to how the resolution of these two disputes impacts whether the Court should grant or deny Fairchild's motion as to claim and/or issue preclusion with respect to infringement and/or validity.

### 4.  PI's Motion for Summary Judgment (D.I. 196)

In a portion of its motion for summary judgment, PI argues that issue preclusion bars Fairchild from re-litigating literal infringement of the '972 patent by the accused LinkSwitch-II products because the jury in *Fairchild II* found no literal infringement. (*See* D.I. 200, Ex. 19 at 10 (*Fairchild II* verdict sheet)) Fairchild concedes that issue preclusion bars it from re-litigating literal infringement of its '972 patent by the accused LinkSwith-II products. Accordingly, the Court will grant PI's motion on this issue.

### C.  Fairchild's Motion for Summary Judgment of No Pre-Filing Priority Date for the '457 Patent (D.I. 193)

### D.  PI's Motion for Summary Judgment that the '915 Patent Is Not Prior Art to the '457 Patent and of No Pre-June 3, 2009 Prior Art Date for the '915 Patent (D.I. 196, "MSJ No. 5")

Among the patents asserted by PI against Fairchild is PI's '457 patent. Among Fairchild's defenses to PI's claim that Fairchild infringes the '457 patent is that the '457 patent is invalid. In attempting to invalidate PI's '457 patent, Fairchild relies on the '915 patent as

15

purported prior art to the '457 patent. The parties disagree as to whether the '915 patent is prior art to the '457 patent and have filed cross-motions for summary judgment on this issue.

Notwithstanding their differing perspectives on the issue, both sides agree that the Court can and should resolve, as a matter of law, whether the '915 patent is prior art to the '457 patent. *(See, e.g.* Tr. at 61 (Fairchild arguing: "So notwithstanding the fact that this comes to you as a summary judgment, Your Honor, this is a pure legal issue. There are no factual underpinnings here. This is a legal issue as to whether they're entitled to an earlier priority date. There are no real disputes regarding the facts that need to be resolved."); *see also id.* at 74-75, 83-85, 100-01) The Court will do so.

It is undisputed that the '457 patent was filed on July 31, 2009. It is further undisputed that the '915 patent was filed on June 3, 2009. Therefore, the '915 patent is prior art to the '457 patent unless the '457 patent has a priority date prior to June 3, 2009, notwithstanding that the '457 patent was not filed until July 31, 2009.

Fairchild, supported by its expert, argues that the '457 patent is not entitled to a pre-filing priority date because PI has failed to provide evidence corroborating (1) pre-filing conception that discloses every feature and limitation in the '457 patent claims, or that (2) the '457 inventors reduced the claims to practice. PI counters that Fairchild has failed to rebut PI's evidence that the '457 patent is entitled to a priority date prior to June 3, 2009.

While the burden of proof on invalidity is on the party asserting that a patent is invalid, a patentee has a burden to come forward with evidence to prove entitlement to claim priority to a filing date that predates the filing date of the patent. *See PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299, 1305-06 (Fed. Cir. 2008). "Priority of invention and its constituent issues of

16

conception and reduction to practice are questions of law predicated on subsidiary factual findings." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003).

Establishing an earlier priority date requires a showing of "[1] conception coupled with [2] reasonable diligence in reducing the invention to practice. " *Id.* As to the first requirement, "[c]onception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it therefore [is] to be applied in practice." *Id.* To show conception, "a party must show possession of every feature recited in the count, and that every limitation of the count must have been known to the inventor at the time of the alleged conception." *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985). The inventor "must provide independent corroborating evidence in addition to his own statements and documents." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1375 (Fed. Cir. 2009) (internal citation omitted). Corroboration is subject to a "rule of reason." *Reese v. Hurst*, 661 F.2d 1222 (C.C.P.A. 1981).

As to the second requirement, reduction to practice requires continuous diligence throughout the entire "critical period." *See Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001); *see also Scott v. Koyoma*, 281 F.3d 1243, 1247 (Fed. Cir. 2002). However, as the Federal Circuit has explained,

> there need not necessarily be evidence of activity on every single day if a satisfactory explanation is evidenced. . . . Proof of reasonable diligence, however, does not require a party to work constantly on the invention or to drop all other work. . . . Additionally, determining whether the required "reasonable diligence," has been satisfied is a case specific inquiry.

*Monsanto*, 261 F.3d at 1369 (internal quotation marks and citations omitted).

17

Fairchild's expert, Dr. Wei, opines that there is not sufficient evidence of conception of the '457 patent prior to the June 3, 2009 effective prior art date of Fairchild's '915 patent. (*See* D.I. 202, Ex. 35 at ¶ 72) However, as evidence of pre-June 3, 2009 conception, PI points to a schematic diagram disclosing the essential elements of the invention which was signed and dated by two of the four co-inventors, Mike Matthews and Balu Balakrishnan, on February 23, 2009. (*See* D.I. 202, Ex. 22 at ¶ 183-89 (PI's expert Dr. Kelley explaining, with side-by-side comparison of schematic diagram and Figure 1 of '457 patent, that the "schematic diagram disclos[es] the complete conception of the invention," including claims 1, 3, 12, 23, 24, 28, and 29)) Although Dr. Kelley concedes that this drawing only shows "many" of the elements of the '457 patent (*see* D.I. 204, Ex. Z at ¶ 191), he further opines that the missing elements are "insubstantial," because they would have been understood by a person of ordinary skill in the art at the pertinent time (*see* D.I. 203, Ex. J at 483; D.I. 202, Ex. 22 at ¶ 186 ("Although not explicitly shown in the February 23, 2009 diagram, it would have been understood by a person of ordinary skill in the art that the intent of the circuit design was to discharge the X capacitor to a threshold (*i.e.* safe) voltage within a maximum amount of time when the power converter was unplugged, consisted with the safety standards in place at the time of the conception.")). As PI explained at the hearing – and Fairchild did not dispute – the two allegedly missing elements are: (1) the power supply which supplies the power for use in the controller chip, which is indisputably required to use the controller chip, and (2) the time it would take to discharge the controller chip, which is indisputably dictated by government standards. (*See* Tr. at 78-79) These are not the type of "missing elements" from which it could be reasonably concluded by a finder of fact that the claims had not been conceived as of February 23, 2009.

18

Further, two of the four co-inventors, Mr. Matthews and Mr. Kung, provided testimony consistent with the contention that the invention of the '457 patent was conceived sometime in early 2009. (*See* D.I. 202, Ex. 23 at 65-67 (Mr. Matthews, after discussing "his first recollection of conceiving the ideas," responding to question about when he "started thinking about addressing the discharge" and answering "the beginning – early part of 2009"); D.I. 202, Ex. 24 at 25 (Mr. Kung, in discussing when he and his co-inventors "came up with that idea," explaining his "earliest involvement" was "early 2009"))

Fairchild is incorrect that PI has failed to produce corroborating documentary evidence to support a pre-June 3, 2009 conception date. *See generally Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993) ("[C]onception by an inventor, for the purpose of establishing priority, can not be proved by his mere allegation nor by his unsupported testimony *where there has been no disclosure to others* or *embodiment of the invention in some clearly perceptible form, such as drawings* or model, with sufficient proof of identity in point of time.") (emphasis added). The record includes a presentation emailed on April 13, 2009 to a non-inventor which includes a schematic diagram like the one discussed above, with the addition of references to the power supply and time to discharge. (D.I. 227, Ex. 8 (referring to D.I. 202, Ex. 27 at PIFIV0117118); *see also* D.I. 202, Ex. 22 at ¶ 193 ("The internal presentation dated April 13, 2009 shows a similar schematic diagram to the one from February 23, 2009, but also an explicit connection to the power converter and a bulleted list describing the invention's operation.")) Fairchild does not dispute the authenticity of this email. Accordingly, the Court concludes that a reasonable finder of fact could only conclude that PI has met its burden to show conception of the '457 patent had occurred no later than April 13, 2009. *See generally Fleming v. Escort Inc.*, 774 F.3d 1371, 1377

19

(Fed. Cir. 2014) (applying "rule of reason" standard to corroboration and finding adequate evidence despite lack of "definitive proof" as "the corroboration requirement has never been so demanding").

Turning to reduction to practice, Fairchild's Dr. Wei opines that there is not sufficient evidence on this requirement as well. (*See* D.I. 202, Ex. 35 at ¶ 72) Dr. Wei points to Mr. Matthews' lab notebooks, on which PI's Dr. Kelley relies, which according to Dr. Wei reveal significant periods (i.e., several weeks) of inactivity between the alleged date of conception of February 23, 2009 and the filing of the patent application on July 31, 2009. (*See* D.I. 204, Ex. Z at ¶¶ 99-101; D.I. 195, Ex. J at 491) Dr. Kelley opines that his review of all of the relevant testimony and documentary evidence reveals that the inventors diligently worked on reducing the invention to practice from as early as February 23, 2009 through July 31, 2009, including: "Mr. Matthews' notebook entry mentioning 'x cap discharge' as a product feature for the 'PC gold' chip" on March 12, 2009; an "[i]nternal presentation by Mr. Matthews showing a detailed description of the invention" on April 13, 2009; an [e]mail from Mr. Matthews to Mr. Bailey indicating the "Our Xcap discharge chip will eliminate the X cap dissipation . . ." on April 21, 2009; a "[s]even page document by Mr. Matthews detailing schematics, operational waveforms, flowcharts, and possible integrated circuit layouts" on May 15, 2009; a "[m]arketing department OTS: Xcap Discharge IC product, Rev. A" in June 2009; a "[d]etailed design presentation by Mr. Kung" on June 23, 2009; "weekly reports authored by Mike Matthews on July 3, 2009, July 17, 2009, and July 24, 2009, and internal presentations by Mike Matthews on July 15, 2009, and July 27, 2009 that discuss various development steps leading up to the filing date of July 31, 2009." (D.I. 202, Ex. 22 at ¶¶ 192-94)

The Court agrees with PI that, on this record, there is no genuine dispute of material fact that the inventors of the '457 patent were continuously diligent in reducing the invention to practice during the entire critical period. The Court reaches this conclusion regardless of whether the critical period is viewed to run from February 23, April 13, or just prior to June 3, 2009.

As PI argued at the hearing, Fairchild's focus on Mr. Matthew's lab notebook is unnecessarily narrow, as there are other co-inventors and undisputed evidence that these co-inventors were also working on what became the '457 patent claims:

> Mr. David Kung, who is the author of these schematics on the bottom, was working the entire time, working on reducing this to practice, getting a chip out the door that they could turn into a product. So it's a bit of a red herring to say, look, there is other stuff in Mike Matthew's notebook when he is one of three inventors. David Kung was the one that was working on actual reduction to practice. . . . David Kung and other non-inventor individuals in the company . . . were working throughout that entire time. This is a new product. They were trying to bring it to market as quickly as they could.

(Tr. at 82-38; *see also* D.I. 202, Ex. 23 at 67 (Matthews' testimony that Kung's "contribution related to the implementation of ideas that were brought to him related to what became the '457 patent"))

In its motion, PI further requests that Fairchild be precluded from eliciting testimony suggesting a prior art date associated with the '915 patent prior to its filing date of June 3, 2009. PI suspects Fairchild may attempt to make such an argument by presenting evidence of inventor disclosure statements from Taiwan dating to April and May 2009. Fairchild responds that it will not argue for a priority date for its '915 patent earlier than June 3, 2009. (*See* D.I. 224 at 34) Nonetheless, Fairchild seeks to reserve the right to present its invention story for the '915 patent,

which would evidently include reference to the inventor disclosure statements of April and May 2009. (*See id.*) In light of the Court's decision today and Fairchild's representation, PI's request will be denied as moot. To the extent there remains a dispute as to the admissibility of evidence of the '915 invention story, the Court will address it, if necessary, in the context of further pretrial proceedings, such as a motion in limine.

## IV. CONCLUSION

An appropriate Order follows.