IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS INDUSTRY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 16-284 (LPS) (CJB) |
| WESTINGHOUSE AIR BRAKE ) | |
| TECHNOLOGIES CORPORATION ) | |
| (d/b/a WABTEC CORPORATION) and ) | |
| WABTEC RAILWAY ELECTRONICS, INC., ) | |
| ) | |
| Defendants. ) | |

**SIEMENS' REPLY BRIEF IN FURTHER SUPPORT OF ITS**
**MOTION TO SEVER DEFENDANTS' PATENT INFRINGEMENT COUNTERCLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com

*Attorneys for Siemens Industry, Inc.*

OF COUNSEL:

Mark Supko
Kathryn L. Clune
Vincent J. Galluzzo
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

April 10, 2017

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ........................................................................................................ 1

II.    WABTEC'S INFRINGEMENT COUNTERCLAIMS SHOULD BE SEVERED FROM THIS ACTION ................................................................................................ 1

    A.    Wabtec Does Not Dispute That Its Infringement Counterclaims Are Separate and Distinct from Siemens' Infringement Claims and Capable of Severance ........................................................................................................... 1

    B.    The Numerous Harms That Will Result from Litigating the Parties' Claims Together Will Greatly Outweigh Any Limited Efficiencies To Be Gained ................................................................................................................ 2

        1.    Wabtec Seriously Overstates the Limited Overlap Between Siemens' Claims and Wabtec's Counterclaims ...................................... 2

        2.    The Undue Complication, Practical Difficulties, and Jury Confusion Resulting from Wabtec's Counterclaims Is Undisputed ........ 5

        3.    Siemens Will Be Unduly Prejudiced Absent Severance While Wabtec Would Suffer No Undue Prejudice If Its Counterclaims Were Severed ............................................................................................ 6

    C.    The Authority from This District Finding Severance Warranted Under the Present Circumstances Is Uncontroverted .......................................................... 8

III.   CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
  896 F. Supp. 505 (D. Md. 1995) ........................................................................................... 9

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  No. 12-cv-540-LPS, D.I. 295 (Apr. 15, 2015 D. Del.) ...................................................... 9, 10

*Garmin Ltd. v. TomTom, Inc.*,
  No. 06-cv-62, 2006 WL 3377487 (W.D. Wis. June 15, 2006) ............................................ 10

*General Tire & Rubber Co. v. Jefferson Chem. Co.*,
  50 F.R.D. 112 (S.D.N.Y. 1970) ............................................................................................. 9

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004) ............................................................................................. 3

*Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*,
  No. 07-cv-613, 2008 WL 4559703 (W.D.Wis. Jan. 24, 2008) .............................................. 9

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
  No. 12-cv-1063-LPS, D.I. 91 (D. Del. July 22, 2015) ...................................................... 8, 9

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
  143 F.R.D. 553 (D. Del. 1992) ..................................................................................... 1, 4, 10

*Rohm & Haas Co. v. Brotech, Corp.*,
  770 F. Supp. 928 (D. Del. 1991) ........................................................................................... 6

*Spellbound Development Group, Inc. v. Pacific Handy Cutter, Inc.*,
  No. 09-cv-951, 2011 WL 1810961 (C.D. Cal. May 12, 2011) ............................................ 10

*Synopsys, Inc. v. Magma Design Automation*,
  No. 05-cv-701-GMS, 2006 WL 1452803 (D. Del. May 25, 2006) ................................ 5, 6, 9

*Viasat, Inc. v. Space Systems/loral, Inc.*,
  No. 12-cv-00260, 2012 WL 12844702 (S.D. Cal. Aug. 23, 2012) ....................................... 10

## I. INTRODUCTION

Wabtec's counterclaims are separate and distinct from Siemens' claims, capable of resolution independently of one another. Though some of the parties' patents relate to the same general field of technology, Wabtec greatly overstates the resulting overlap in witnesses and evidence between the parties' respective infringement claims. In reality, any potential overlap is limited and heavily outweighed by the risks of case complication, jury confusion and burden, and undue prejudice to Siemens that would result absent severance. Accordingly, Siemens respectfully requests that the Court sever Wabtec's counterclaims into a separate action.

## II. WABTEC'S INFRINGEMENT COUNTERCLAIMS SHOULD BE SEVERED FROM THIS ACTION

### A. Wabtec Does Not Dispute That Its Infringement Counterclaims Are Separate and Distinct from Siemens' Infringement Claims and Capable of Severance

As set forth in Siemens' opening brief, each of Wabtec's infringement counterclaims is permissive, not compulsory, giving rise to an independent and distinct cause of action from each of Siemens' infringement claims. (D.I. 67 at 7-8 (quoting *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992) and *Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 660 (D. Del. 2012)).) Wabtec does not dispute this fact or that its counterclaims are "capable of resolution" independently of Siemens' claims. (D.I. 67 at 7-8 (quoting *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 WL 6134052, at *4 (W.D. Pa. Oct. 16, 2015)).) Wabtec instead incorrectly argues that it is Siemens' position that "any permissive counterclaim should be severed." (D.I. 71 at 5.) That is not so. Siemens simply contends that the undisputed nature of Wabtec's counterclaims renders the circumstances *appropriate* for severance. (D.I. 67 at 7-8.) What makes severance *necessary*, however, is that any potential efficiencies achieved by litigating the claims and counterclaims together are

1

significantly outweighed by the increased case complexity, jury confusion, and undue prejudice that litigating them together would cause. (*Id.* at 8-16.)

### B. The Numerous Harms That Will Result from Litigating the Parties' Claims Together Will Greatly Outweigh Any Limited Efficiencies To Be Gained

#### 1. Wabtec Seriously Overstates the Limited Overlap Between Siemens' Claims and Wabtec's Counterclaims

Any meaningful overlap in discovery or evidence between Wabtec's counterclaims and Siemens' claims is unlikely, with the most probable overlap being limited to a handful of prior art references and a high-level tutorial describing the PTC Locomotive technology. (*Id.* at 8-13.) Indeed, this accounts for a large part of the overlap Wabtec is able to identify, despite claiming that there is "significant overlap" between the parties' claims that "would waste judicial resources" if Wabtec's counterclaims were severed. (D.I. 71 at 4-6.)

Claiming there is some overlap between the technology and prior art references, Wabtec takes issue with Siemens' statement that the three Wabtec patents are "unrelated" to Siemens' thirteen patents. (*Id.* at 4.) But none of the Siemens patents has any familial relationship to Wabtec's. (D.I. 67 at 4.) Wabtec simply ignores this fact and its consequences, including that there is no overlap between the six inventors on the Siemens patents and the eight inventors on Wabtec's. (*Id.*) The parties' respective patents also have different priority dates, specifications, and prosecution histories. (*Id.*) Thus, the lack of any familial relationship will have a real effect on limiting any purported overlap in witnesses and documentary evidence related to claim construction, invalidity, and other issues, and cannot simply be ignored. (*Id.*)

Moreover, the technological relationship between the Siemens and Wabtec patents is also limited. First, Wabtec does not dispute that four of Siemens' patents have no technological overlap with Wabtec's patents. (*Id.* at 5.) As for the remaining Siemens patents, Wabtec is only able to argue that both parties' patents are generally directed to the Locomotive segment of PTC

2

technology. (D.I. 71 at 4.) Although that may be true as a broad proposition, Wabtec concedes that each of Siemens' patents is "directed to different functionality" (D.I. 67 at 4-5), and it is black letter law that "[e]ach claim defines a separate invention," *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148 (Fed. Cir. 2004). Yet Wabtec fails to identify any specific overlap among the 96 asserted claims of Siemens' Locomotive patents and the 84 claims of its own patents, other than to broadly argue they all relate to the Locomotive segment.

The parties' accused products are also different. First, Siemens has accused Wabtec's Back Office components and End-of-Train devices of infringing four different patents, whereas Wabtec has not accused any Siemens Back Office components or End-of-Train devices of infringement. (D.I. 67 at 4-5.) As for Siemens' Trainguard PTC and Wabtec's I-ETMS systems, Wabtec only asserts that both broadly concern the Locomotive segment, without identifying any specific overlap. (D.I. 71 at 5-6.) But there can be no dispute that the products are proprietary to each party and consist of numerous different components. (D.I. 67 at 5.) In other words, Wabtec's and Siemens' infringement claims concern different patents, inventors, priority dates, specifications, prosecution histories, and accused products. (*Id.* at 4-6, 8-13.) Wabtec's case will therefore involve different infringement, validity, and damages evidence, including wholly different fact witnesses and possibly different expert witness, than Siemens will present in its affirmative infringement case. (*Id.*)

Not only is Wabtec's current argument unsupported by the facts, it also contradicts Wabtec's previous assertions to this Court when Siemens sought to add six patents to this case. Unlike Wabtec's three patents, most of those patents were either related to one another or to the seven patents originally asserted, and none implicated any new accused products. (*Id.* at 10-11.) Wabtec nevertheless argued that the Siemens patents would likely require "different fact and

3

expert witnesses, as well as different prior art references," new non-infringement analyses, and result in "creating a patent case within a patent case." (*Id.*)

Wabtec's remaining arguments lack merit. Though Wabtec argues that the parties "rely on some of the same prior art for their respective cases," it only identifies one such reference. (D.I. 71 at 4.) Indeed, because of the significant difference in priority dates between the Siemens and Wabtec Locomotive segment patents, any additional prior art overlap is likely to be limited. (D.I. 67 at 6, 12.) In fact, any references dating from the period in between the parties' respective patent priority dates will by definition only constitute prior art to Wabtec's patents, not Siemens', such as the CAS ConOps document that renders obvious two of Wabtec's patents. (D.I. 64.) And any prior art asserted against Siemens' End-of-Train and Back Office related patents is unlikely to have any relevance with respect to Wabtec's Locomotive segment patents. (D.I. 67 at 5-6.)

Wabtec's final argument is that because its I-ETMS system and the Siemens Trainguard PTC system are commercial embodiments of the parties' respective patents, some witnesses might have some knowledge relevant to both Siemens' and Wabtec' claims, and there will be some overlap in documents pertaining to damages. (D.I. 71 at 5-6.) But Wabtec does not dispute that these concerns may be resolved by "agreeing to use certain documents produced in this case in the severed case, and coordinating depositions of the few witnesses that may overlap in both cases." (D.I. 67 at 12.) The limited potential overlap Wabtec identifies is therefore insufficient to prevent severance of its counterclaims where "judicial economies can be accomplished" through Siemens' proposed coordination and the harm from litigating all the claims together far outweighs the limited benefits of doing so. *Metallgesellschaft*, 143 F.R.D. at 558-59,

4

### 2. The Undue Complication, Practical Difficulties, and Jury Confusion Resulting from Wabtec's Counterclaims Is Undisputed

This thirteen-patent case is already complicated. (D.I. 67 at 8-13.) Wabtec cannot credibly dispute that adding what effectively amounts to a separate patent infringement case concerning different patents and accused products, to what is already a 13-patent case—concerning 120 patent claims asserted against three distinct technologies; involving different inventors, priority dates, specifications, prosecution histories; and numerous invalidity challenges, including up to 130 prior art references or combinations thereof—would unduly complicate the existing case and cause jury confusion. (*Id.*)[1] In fact, some of the efficiencies that Wabtec claims would result from litigating its counterclaims with Siemens' claims would create jury confusion. (*Id.* at 13.) For example, any purported overlap in the prior art would likely cause the jury difficulty in keeping track of which prior art predates whose patents and discloses which limitations, especially where at least some of Siemens' own patents are likely to constitute prior art to Wabtec's patents. (*Id.*) Likewise, lost profits and royalty determinations are complicated enough for one product, but here the jury would have to discern between damages for two competing systems accused of infringing different patents.

Tellingly, Wabtec spends barely a paragraph to dispute the significant complication and confusion that its counterclaims would cause, offering only a conclusory dismissal of Siemens' concerns. (D.I. 71 at 8.) Wabtec's entire argument is premised on a single decision from this district, *Synopsys, Inc. v. Magma Design Automation*, No. 05-cv-701-GMS, 2006 WL 1452803, at *4 (D. Del. May 25, 2006). But *Synopsis* involved antitrust, not infringement, counterclaims

---

[1] As noted earlier, Wabtec accused Siemens' previous addition of six patents of "essentially creating a patent case within a patent case," even though those patents were closely tied to those already asserted and pertained to already accused products, unlike Wabtec's patents.

5

that were based upon allegedly fraudulent procurement of the asserted patents—i.e., the same charges that were the "centerpiece" of defendants' invalidity defenses. *Id.* As such, there was little risk they would complicate the case or confuse the jury.[2] *Synopsys* thus has no applicability here and, without it, the significant case complication and jury confusion issues are undisputed.

Wabtec also does not dispute the numerous practical difficulties that would result from not severing its counterclaims. (D.I. 67 at 15-16.) Instead, Wabtec blames Siemens for these problems, arguing that Siemens should have negotiated modifications for deadlines and various hearing, briefing, and discovery limits to account for Wabtec's counterclaims. (D.I. 71 at 11-12.) Not only are many of those limits beyond the parties' discretion and premature for consideration, but merely increasing the page counts, discovery limits, and hearing times to account for the counterclaims would not solve the problem of the case becoming unwieldy, especially under the compressed schedule Wabtec proposes. Moreover, Wabtec's proposal to narrow the number of asserted claims only underscores the prejudice that Siemens would suffer in not being able to adequately prosecute its affirmative case if Wabtec's counterclaims are not severed.

### 3. Siemens Will Be Unduly Prejudiced Absent Severance While Wabtec Would Suffer No Undue Prejudice If Its Counterclaims Were Severed

To accommodate Wabtec's counterclaims, the current schedule would need to be revised either by significantly pushing back numerous deadlines and delaying the case, or unreasonably compressing the schedule for Wabtec's counterclaims to squeeze them into the current track with minor extensions. (D.I. 67 at 13-16.) Either option is equally prejudicial to Siemens. (*Id.*)

Wabtec proposes the second of these bad options. (D.I. 71 at 8-11; D.I. 68), which would prejudice Siemens by significantly reducing the amount of time for it to defend itself, reducing

---

[2] Such counterclaims are compulsory. *Rohm & Haas v. Brotech*, 770 F.Supp. 928 (D. Del. 1991).

Siemens' time and resources to prosecute its affirmative case, and diminishing the cost-effectiveness of any potential IPR proceedings. (D.I. 67 at 14.) Wabtec's overriding response is that its proposed compressed schedule is reasonable because it provides approximately the same amount of time for Wabtec's three patents as was added for Siemens' additional six patents, and six is greater than three. (D.I. 71 at 10-12.) But Siemens' additional patents more closely overlap with the patents already in the case, and do not implicate any new accused products. Their addition therefore did not "double[]" the scope of this case (*id.* at 10), but in effect simply increased the number of claims asserted against the same accused products. In contrast, Wabtec's counterclaims inject what amounts to an entirely new case into the action, with three unrelated patents asserted against Siemens' products. The time agreed-upon to accommodate Siemens' effective addition of claims is simply inadequate for Wabtec's addition of a new case.

Wabtec also claims that Siemens "greatly overstates the status of this case," pointing to the number of witnesses deposed and number of document *productions* made to date. (D.I. 71 at 10.) This simplistic argument glosses over the significant number of *documents* (over 160,000, nearly 1 million pages) already produced and the impending June deadline for substantial completion of document production. (D.I. 67 at 4.) It also wholly ignores other discovery in which the parties have engaged, and the completion of many of the substantive Court-ordered deadlines in this case, including Siemens' identification of accused products and damages model, initial claim charts and infringement contentions, as well as Wabtec's initial invalidity contentions. (*Id.*) The parties are exchanging claim construction positions this month and will then begin preparing their *Markman* briefs, which are due in June. (*Id.*) Thus, notwithstanding Wabtec's conclusory argument to the contrary, Siemens' affirmative case *is* well underway.

Wabtec also spends a large part of its opposition arguing that its infringement counterclaims were not untimely under the negotiated schedule. (D.I. 71 at 8-10, 11.) But that is beside the point, as that schedule related to Siemens' patent infringement claims and did not take into account the possibility of Wabtec asserting counterclaims for patent infringement. (D.I. 67 at 3, 13-14). Wabtec's delay in asserting its counterclaims—for whatever reason—demonstrates the lack of urgency in having them decided alongside Siemens' claims. (*Id.* at 15.) Thus, unlike Siemens, which would be significantly prejudiced by Wabtec's proposed compressed schedule, Wabtec identifies no prejudice it would suffer if its counterclaims were to proceed separately on the same track they would have been afforded if brought in their own case.[3]

### C. The Authority from This District Finding Severance Warranted Under the Present Circumstances Is Uncontroverted

The strong preference in this District is to sever patent infringement counterclaims even where there is some technological or evidentiary overlap with the affirmative claims to avoid undue complication of the case, jury confusion, and/or prejudice to the parties. (D.I. 67 at 8-9 (collecting cases).) Unable to deal with the import of Siemens' cited cases from this District, Wabtec ignores three of them entirely, only making a half-hearted and wholly-unsuccessful attempt to distinguish the fourth. (D.I. 71 at 7 (discussing *LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 12-cv-1063-LPS, D.I. 91 (D. Del. July 22, 2015)).)

Specifically, Wabtec argues that there is no concern here, as in *LG*, that this case will proceed "more slowly" because Wabtec's proposed schedule "is just as aggressive for its Locomotive Infringement Counterclaims as Siemens previously proposed for its infringement

---

[3] Wabtec argues that even if severed, Siemens will still have to defend the counterclaims while this case proceeds. (D.I. 71 at 10.) But there will be more time to do so with the counterclaims on a normal schedule, rather than with two full cases crammed into a schedule negotiated for one.

8

claims." (*Id.*) But Wabtec's proposed schedule is unworkable and prejudicial to Siemens. (D.I. 67 at 13-16.) A schedule that would allow adequate time for Siemens to prosecute its affirmative claims and defend against Wabtec's counterclaims would, of course, cause this case "to proceed more slowly." And from a practical standpoint, even the unrealistic and prejudicial schedule proposed by Wabtec would still slow down the case as its unwieldy scope would inevitably require extensions to deadlines, page limits, and the like, resulting in further delays. (*Id.* at 15-16.) Further, Wabtec wholly fails to address the Court's second concern in *LG*—namely, that keeping infringement claims and counterclaims together will result in things being "more complicated" "at every step." Nor could Wabtec do so, as it is indisputable that this case would become more complicated at every turn if the counterclaims remained alongside Siemens' separate claims, truly resulting in "a patent case within a patent case," as detailed above.[4]

Wabtec has cited no authority from this District to contravene the authorities relied upon by Siemens. *Fairchild*, Wabtec's only District of Delaware case, is inapplicable to the facts at hand. (*See* D.I. 71 at 7.)[5] First, the motion to sever in that case involved only one of eight patents at issue, and only one of the four asserted by plaintiff. *Fairchild Semiconductor Corp. v. Power*

---

[4] Wabtec's attempt to distinguish Siemens' additional authorities also fails. (D.I. 71 at 7, n.3.) Although the severed counterclaims in both *General Tire* and *Kraft Foods* were transferred to another venue where related proceedings were pending, in both cases the district court decided the issue of severance before reaching the separate issue of transfer, finding severance warranted despite a general overlap in technology because of numerous differences, including with respect to "the inventions, the dates of invention, the inventors, places of invention and the ownership" of the patents. *General Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 114 (S.D.N.Y. 1970); *Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*, No. 07-cv-613, 2008 WL 4559703, at *2-3 (W.D. Wis. Jan. 24, 2008). The *CVI* court relied on these same differences, plus differences related to infringement, validity, enforceability, and damages, and the risk of juror confusion, to sever the counterclaims there. *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506-07 (D. Md. 1995). That the counterclaims in *CVI* involved different parties than the original claims was merely one, final factor considered. *Id.*

[5] Wabtec also cites *Synopsys*, which is irrelevant for the reasons discussed earlier.

9

*Integrations, Inc.*, No. 12-cv-540-LPS, D.I. 295 at 2, 6 (Apr. 15, 2015 D. Del.). Thus, even if the one patent had been severed, three of plaintiff's and four of defendant's patents, and both parties' accused products, would have remained in the case. *Id.*[6] In contrast, severance here would entirely eliminate the patent case within a patent case consisting of Wabtec's patents and infringement claims against Siemens' products. Moreover, in *Fairchild*, trial was "scheduled to begin in approximately six weeks" and thus discovery and all other issues with respect to the patent-to-be-severed had already largely been litigated. That procedural posture was found to be the "most prominent and weighty factor under the circumstances" against severance. *Id.* at 6. In contrast, Wabtec's counterclaims are in their infancy, only having been added in February, while Siemens' affirmative case is already a year old and should not be delayed further.[7]

## III. CONCLUSION

For all of the foregoing reasons, Siemens respectfully requests that the Court grant its Motion and sever Wabtec's infringement counterclaims in the interests of fairness and justice.

---

[6] Even then the court found that the simplification factor favored a stay, though "only slightly," as "a seven-patent case is somewhat less involved than an eight-patent case." (D.I. 71-1 at 6.)

[7] Wabtec's authorities from other districts fare no better. (D.I. 71 at 7.) The counterclaims in *Spellbound* only added one patent to a three patent case about simple utility knife technology and thus did not involve the same level of case complexity, risk of jury confusion, or schedule delay as are at issue here. *Spellbound Dev. Group, Inc. v. Pacific Handy Cutter, Inc.*, No. 09-cv-951, 2011 WL 1810961, at *3-4 (C.D. Cal. May 12, 2011). In *Garmin*, the plaintiff only moved for severance of the counterclaims after the parties had already engaged in discovery with respect to those counterclaims and the schedule had already been extended, neither of which has happened here. *Garmin Ltd. v. TomTom, Inc.*, No. 06-cv-62, 2006 WL 3377487, at *1 (W.D. Wis. June 15, 2006). *Viasat* is not instructive as it consists of one conclusory paragraph where the court erroneously stated that the parties' respective infringement claims involve "the same…claims concerning the same technologies," and "an essentially unitary problem." *Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-cv-260, 2012 WL 12844702, at *2 (S.D. Cal. Aug. 23, 2012). These findings contradict black letter law that each patent claim defines a separate invention and each patent gives rise to a distinct infringement claim, as well as this Court's precedent. *Metallgesellschaft*, 143 F.R.D. at 558-59. The conclusory *Viasat* opinion is also based in part on the fact that severance would result in "two separate lawsuits…involving the same parties [and] same lawyers." *Viasat*, at *2. But that is true of virtually all severed cases.

10

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Karen Jacobs* |
| | _____ |
| | Jack B. Blumenfeld (#1014) |
| | Karen Jacobs (#2881) |
| | 1201 North Market Street |
| | P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE 19899-1347 |
| | (302) 658-9200 |
| Mark M. Supko | jblumenfeld@mnat.com |
| Kathryn L. Clune | kjacobs@mnat.com |
| Vincent J. Galluzzo | |
| CROWELL & MORING LLP | *Attorneys for Siemens Industry, Inc.* |
| 1001 Pennsylvania Avenue NW | |
| Washington, DC 20004 | |
| (202) 624-2500 | |

Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

April 10, 2017
10959328

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 10, 2017, upon the following in the manner indicated:

| | |
|---|---|
| Steven L. Caponi, Esquire<br>K&L GATES LLP<br>600 North King Street, Suite 901<br>Wilmington, DE 19801<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| Alan L. Barry, Esquire<br>Jason A. Engel, Esquire<br>Benjamin E. Weed, Esquire<br>Devon C. Beane, Esquire<br>Katherine L. Hoffee, Esquire<br>K&L GATES LLP<br>70 West Madison Street, Suite 3100<br>Chicago, IL 60602<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |

*/s/ Karen Jacobs*

Karen Jacobs (#2881)

10959328