IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS INDUSTRY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-284 (LPS) (CJB) |
| | ) |
| WESTINGHOUSE AIR BRAKE | ) |
| TECHNOLOGIES CORPORATION | ) |
| (d/b/a WABTEC CORPORATION) and | ) |
| WABTEC RAILWAY ELECTRONICS, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF SIEMENS INDUSTRY, INC.'S SECOND NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) TO DEFENDANTS**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff Siemens Industry, Inc. ("Siemens") will take the deposition of the designated representative(s) of Defendants Westinghouse Air Brake Technologies Corporation d/b/a Wabtec Corporation and Wabtec Railway Electronics, Inc. (together, "Defendants") on the topics specified in the attached Schedule A.

The deposition will begin on March 14, 2018 at 9:00 a.m. at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware, or at such other place and time as may be agreed upon among counsel or ordered by the Court, and will continue until completed. The deposition will be taken before an officer duly authorized to administer oaths under the laws of the United States and/or the State of Delaware, and will be recorded by audio, audio-visual, and stenographic means.

Pursuant to Rule 30(b)(6), Defendants shall designate and produce at the deposition one or more officers, directors, managing agents, or other persons who consent to testify on their behalf with respect to the matters specified in Schedule A.

- 2 -

OF COUNSEL:

Mark M. Supko
Kathryn L. Clune
Vincent J. Galluzzo
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

February 14, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
skraftschik@mnat.com

*Attorneys for Siemens Industry, Inc.*

## SCHEDULE A

## TOPICS FOR SECOND RULE 30(b)(6) DEPOSITION OF DEFENDANTS

### Definitions

Insofar as any of the terms below are used herein, the following definitions shall apply:

1. "Plaintiff" or "Siemens" means Siemens Industry, Inc. and its agents, employees, shareholders, officer, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on its behalf.

2. "Defendants," "Wabtec," "You," and "Your" means Westinghouse Air Brake Technologies Corporation and Wabtec Railway Electronics, Inc. and their agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on their behalf.

3. This "Lawsuit," "Case," or "Action" means this litigation in the United States District Court for the District of Delaware, C.A. No. 1:16-cv-00284-LPS-CJB.

4. "Quantum" means Quantum Engineering, Inc. and its agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on its behalf.

5. "Invensys" means Invensys Rail Corporation and its agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on its behalf.

6. "ARINC" means ARINC Incorporated and/or ARINC RailwayNet, and their agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on its behalf.

7. The "'461 Patent" means United States Patent No. 6,996,461.

8. The "'801 Patent" means United States Patent No. 7,092,801.

9. The "'860 Patent" means United States Patent No. 7,236,860.

10. The "'032 Patent" means United States Patent No. 7,467,032.

11. The "'850 Patent" means United States Patent No. 7,742,850.

12. The "'494 Patent" means United States Patent No. 8,714,494.

13. The "'698 Patent" means United States Patent No. 9,233,698.

14. The "'195 Patent" means United States Patent No. 6,978,195.

15. The "'926 Patent" means United States Patent No. 7,079,926.

16. The "'471 Patent" means United States Patent No. 7,200,471.

17. The "'953 Patent" means United States Patent No. 6,845,953.

18. The "'774 Patent" means United States Patent No. 7,036,774.

19. The "'110 Patent" means United States Patent No. 6,824,110.

20. "Patents-in-Suit" means United States Patent No. 6,996,461, United States Patent No. 7,092,801, United States Patent No. 7,236,860, United States Patent No. 7,467,032, United States Patent No. 7,742,850, United States Patent No. 8,714,494, United States Patent No. 9,233,698, United States Patent No. 6,978,195, United States Patent No. 7,079,926, United States Patent No. 7,200,471, United States Patent No. 6,845,953, United States Patent No. 7,036,774, and United States Patent No. 6,824,110, collectively.

21. "Related Application" means any patent application that led to, or stems from, the applications that matured into any of the Patents-in-Suit, any ancestors of the applications that matured into any of the Patents-in-Suit, or any children of the applications that matured into any of the Patents-in-Suit, either directly or indirectly, including any continuation, continuation-in-

part, or divisional application thereof, and any application relied upon for priority by such applications.

22. "Related Patent" means any patent that issued from a Related Application.

23. "AAR" means the "Association of American Railroads."

24. "ITC" means the Interoperable Train Control Committee.

25. "PTC" means the set of technologies generally known as Positive Train Control, including but not limited to the Back Office, Locomotive, Wayside, and Maintenance of Way segments.

26. "Siemens' Telemetry Product(s)" means Siemens' end of train devices, including models Q3917, Q3920, and R3930 (Dual Pipe), and any predecessor products made or sold by Quantum or Invensys.

27. "Wabtec's I-ETMS Product(s)" means any PTC product, system or component thereof, made (in whole or part), used, sold, offered for sale, promoted, marketed, or publicized by or for by Wabtec in the United States, or imported by or for Wabtec in the United States, including but not limited to those in the Locomotive Segment (Train Management Computer ("TMC"), I-ETMS Display, Commlink II Communications Manager ("Commlink II"), Tri-Mode Antenna, 220MHz data radio and antenna, cellular modem and antenna, WiFi modem and antenna, Asy Cut-Out Switch, and Navigation Sensor Module) and the Office Segment (Train Management Dispatch System ("TMDS") and Back Office Server ("BOS")), including but not limited to the TMDS BOS and AIMCore BOS and IC3 and IVS subsystems.

28. "Wabtec's Telemetry Product(s)" means any End of Train ("EOT") telemetry product, system, or component thereof, made (in whole or part), used, sold, offered for sale, promoted, marketed, or publicized by or for by Wabtec in the United States, or imported by or

for Wabtec in the United States, including but not limited to TrainLink ATX ("TrainLink") (including TLK-EOT-NG3 and TLK-EOT-NG) and TrainLink II 4G-ATX ("TrainLink II") (including ATX-EOT-4G), and other Head of Train ("HOT") units and EOT units.

29. "Accused Product(s)" means Wabtec's I-ETMS Products and Wabtec's Telemetry Products, collectively.

30. "Person" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

31. "Third party" means any person or persons other than the Plaintiff or Defendants identified herein.

32. "Communication" means a verbal or nonverbal exchange, whether written or oral, including inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, e-mail or voice-mail or instant messages, and advertisements.

33. The connectives "and" and "or" and "between" and "among" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

34. The term "concerning" means analyzing, comprising, consisting of, constituting, containing, contradicting, corroborating, describing, discussing, documenting, embodying, evidencing, identifying, including, mentioning, pertaining to, referring to, reflecting, relating to, reporting, showing, supporting, or stating the particular subject matter identified.

35. "Document" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation, any written or graphic matter or other medium of any kind or character, however produced, reproduced, or stored upon which

intelligence or information is recorded or from which intelligence or information can be derived, which is or has been in the possession, custody, or control of Defendants. The term "document" specifically includes information, data, and material produced, stored, or maintained in electronic, magnetic, and/or computerized media or devices. Any non-identical copies of a document (whether different from the original because of the inclusion of notes, comments, notations, interlineations, receipt stamps, or otherwise, are to be considered a separate "document."

36. "Relating to" and "relate to" shall mean "concerning, referring to, identifying, discussing, comprising, or describing," and includes any document, communication, or other exchange that constitutes, contains, embodies, comprises, reflects, identifies, states, deals with, comments on, responds to, describes, analyzes, or is in any way pertinent to the subject.

37. "Any" shall mean any or all and the term "all" shall mean any or all.

38. "Identify" means to provide a description sufficient in specificity such that the document or thing can be unambiguously obtained by means of such description in a request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure, which will include, where applicable, the document's or thing's title, date, author(s) or creator(s), recipient(s), Bates number, and present location.

39. The use of the singular form of any word or phrase shall include the plural form, and vice versa.

40. The use of the past or present tense in a request includes both past and present tenses.

41. The word "including" means including without limitation.

42. "Defendants' Answer" means Defendants' Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, ECF No. 56, filed on February 14, 2017.

### Deposition Topics

1. Wabtec's communications and/or interactions with AAR, including but not necessarily limited to the ITC, in connection with the ITC's selection of Wabtec's Electronic Train Management System (ETMS) platform as a standard for PTC.

2. Wabtec's communications and/or interactions with BNSF in the 2002/2003 timeframe concerning any demonstration, offer to sell, or sale of any Wabtec train control system, including but not necessarily limited to ETMS.

3. Any analysis undertaken by or for Wabtec, or communicated to Wabtec by BNSF or anyone else, comparing the Wabtec ETMS and Quantum Train Sentinel systems in the 2002/2003 timeframe.

4. Any analysis undertaken by or for Wabtec, or communicated to Wabtec, comparing Wabtec's Telemetry Products to Siemens' Telemetry Products.

5. The date(s) and circumstances surrounding Wabtec's first knowledge of each of the Patents-in-Suit, and any actions taken by Wabtec as a result of such knowledge.

6. Any actions taken by Wabtec to avoid infringement of each Patent-in-Suit prior to the assertion of such Patent-in-Suit in this Litigation.

7. The operation and functionality of Wabtec's I-ETMS Products to enforce, or prevent violations of, track warrants, track authorities, movement warrants, movement authorities, circulation warrants, or circulation authorities.

8. The operation and functionality of Wabtec's I-ETMS Products to enforce, or prevent violations of, speed limits or speed restrictions.

9. The operation and functionality of Wabtec's I-ETMS Products to automatically activate a train horn in connection with the approach to a grade crossing.

10. The operation and functionality of Wabtec's I-ETMS Products to automatically control the train, or take other automatic action, based on communications with wayside devices.

11. The operation and functionality of Wabtec's I-ETMS Products to verify, process, and send messages, including but not limited to mandatory directives, between a dispatch system and a locomotive.

12. Communications between Wabtec's I-ETMS Products and wayside devices, including but not limited to the process by which the TMC obtains information from wayside devices, the information communicated between the TMC and wayside devices, and the manner in which communications between the TMC and wayside devices are authenticated.

13. The algorithm(s) used in Wabtec's I-ETMS Products for calculating warning curves, calculating braking curves, and implementing predictive and reactive braking.

14. The hazard rate, mean time to hazardous event (MTTHE), mean time between hazardous event (MTBHE), availability, and safety integrity level (SIL) of each of Wabtec's I-ETMS Products.

15. Wabtec's business plans, including, but not limited to, strategic plans, operating plans, marketing plans, sales plans, financial plans, and budgets relating to Wabtec's I-ETMS Products, including market analyses, competitive analyses (including identification of competitors), price lists or pricing policies, and projections relating to sales, market share, and revenues.

16. Wabtec's business plans, including, but not limited to, strategic plans, operating plans, marketing plans, sales plans, financial plans, and budgets relating to Wabtec's Telemetry

Products, including market analyses, competitive analyses (including identification of competitors), business plans, price lists or policies, and projections relating to sales, market share, and revenues.

17. Sales or offers for sale in the United States of each Accused Product, by or on behalf of Wabtec, the SKU or model numbers of the Accused Products sold or offered for sale, the quantity of each Accused Product actually sold, the selling price per unit, the fixed and variable costs attributed to the sale, the profit realized from each sale, the method used to calculate the profit, and any other financial record related to each Accused Product, including any other revenue received or contract signed by Wabtec related to support, maintenance, installation, development or any other services or products which relate to the Accused Products.

18. Sales or offers for sales in the United States of each Accused Product by or on behalf of Wabtec, to each customer, per year, the selling price per customer, the fixed and variable costs attributed to the sale, and the profit realized from each customer, the method used to calculate the profit, and any other financial record related to each Accused Product.

19. With respect to Wabtec's produced financial records and summaries purporting to reflect revenues and other financial information relating to the Accused Products, the circumstances under which such records were generated, including the accounting methods and practices employed, the underlying data, and the explanation of any terms or legends.

20. Agreements or licenses concerning Wabtec's I-ETMS Products, including any license with customers and any license with ARINC or other third parties.

21. Agreements or licenses concerning Wabtec's Telemetry Products.

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 14, 2018, upon the following in the manner indicated:

| | |
|---|---|
| Steven L. Caponi, Esquire<br>K&L GATES LLP<br>600 North King Street, Suite 901<br>Wilmington, DE  19801<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| Alan L. Barry, Esquire<br>Jason A. Engel, Esquire<br>Benjamin E. Weed, Esquire<br>Devon C. Beane, Esquire<br>Gina A. Jenero, Esquire<br>Katherine L. Hoffee, Esquire<br>Erik J. Halverson, Esquire<br>K&L GATES LLP<br>70 West Madison Street, Suite 3100<br>Chicago, IL  60602<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| William Pietragallo, II, Esquire<br>Michael Morse, Esquire<br>John Brumberg, Esquire<br>Dasha Gorlov, Esquire<br>PIETRAGALLO GORDON ALFANO BOSICK<br>& RASPANTI, LLP<br>One Oxford Centre, 38th Floor<br>Pittsburgh, PA  15219<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |

*/s/ Stephen J. Kraftschik*

Stephen J. Kraftschik (#5623)