## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS INDUSTRY, INC., <br><br> Plaintiff, <br><br> v. <br><br> WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION (d/b/a WABTEC CORPORATION) and WABTEC RAILWAY ELECTRONICS, INC., <br><br> Defendants. | C.A. No. 16-284 (LPS) |

## MEMORANDUM IN SUPPORT OF WABTEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE INTERROGATION PATENTS

*Of counsel:*

Alan L. Barry, Esq.
Jason A. Engel, Esq.
Benjamin E. Weed, Esq.
Devon C. Beane, Esq.
Katherine L. Hoffee, Esq.
Erik J. Halverson, Esq.
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602
Phone: 312. 372.1121
alan.barry@klgates.com
jason.engel@klgates.com
benjamin.weed@klgates.com
devon.beane@klgates.com
katy.hoffee@klgates.com
erik.halverson@klgates.com

Dated:  August 31, 2018

**K&L GATES LLP**
Steven L. Caponi, Esq. (#3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Phone: 302.416.7080
steven.caponi@klgates.com

*Attorneys for Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc.*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ........................................... 2

III.    STATEMENT OF FACTS .................................................................................... 3

IV.     LEGAL STANDARDS ........................................................................................ 4

V.      ARGUMENT ........................................................................................................ 6

        a.   The Interrogation Patents' Claims Require Messages To Reach Configurable
             Devices/Track Circuits.............................................................................. 6

        b.   I-ETMS Does Not Literally Infringe The Interrogation Patents................ 10

             i.   I-ETMS Messages Never Reach Configurable Devices ................ 10

             ii.  I-ETMS Messages Never Reach Track Circuits ........................... 10

        c.   Siemens Cannot Defeat Summary Judgment Using the Doctrine of Equivalents ...... 11

VI.     CONCLUSION................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ................................................................................................ 5

*Aylus Networks, Inc. v. Apple Inc.*
   856 F.3d 1353 (Fed. Cir. 2017) ............................................................................ 12

*Bicon, Inc. v. Straumann Co.*
   441 F.3d 945 (Fed. Cir. 2006) .............................................................................. 11

*Convolve, Inc. v. Compaq Comput. Corp.*
   812 F.3d 1313 (Fed. Cir. 2016) .............................................................................. 5

*Freedman Seating Co. v. Am. Seating Co.*
   420 F.3d 1350 (Fed. Cir. 2005) .............................................................................. 6

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*
   339 U.S. 605 (1950) ................................................................................................ 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) ................................................................................................ 5

*Reeves v. Sanderson Plumbing Prods., Inc.*
   530 U.S. 133 (2000) ................................................................................................ 5

*Seachange Int'l, Inc. v. C-COR, Inc.*
   413 F.3d 1361 (Fed. Cir. 2005) ............................................................................ 11

*Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter*
   2011 WL 5554312 (C.D. Cal. Nov. 14, 2011) ...................................................... 11

*St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*
   2012 WL 1015993 (D. Del. Mar. 26, 2012) (Stark, J.) ........................................... 5

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*
   520 U.S. 17 (1997) .................................................................................................. 6

*Woods v. DeAngelo Marine Exhaust, Inc.*
   692 F.3d 1272 (Fed. Cir. 2012) ............................................................................ 11

**Rules**

Fed. R. Civ. P. ........................................................................................................... 4

## I.    INTRODUCTION

Plaintiff Siemens Industry, Inc. ("Siemens") is asserting 12 patents against Westinghouse Air Brake Technologies Corp. and Wabtec Railway Electronics, Inc. (collectively, "Wabtec") but has shown no inclination to narrow the case for trial.  Notwithstanding Siemens' reticence, this case is ripe for pre-trial narrowing through summary judgment of non-infringement of U.S. Patent Nos. 6,996,461 ("the '461 Patent") and 7,236,860 ("the '860 Patent") ("the Configurable Device Patents"), as well as 6,845,953 ("the '953 Patent") and 7,036,774 ("the '774 Patent") ("the Track Circuit Patents") (collectively "the Interrogation Patents") pursuant to Fed. R. Civ. P. 56.  The undisputed facts demonstrate Wabtec's I-ETMS system does not infringe these patents.

This Court's Claim Construction Opinion (D.I. 165) explains that the Interrogation Patents require an interrogation message be sent from a train to a configurable device or track circuit transceiver located along the wayside.  They further require that the train listen for a response message from the configurable device/track circuit transceiver.  The Patent Trial and Appeal Board ("PTAB") agreed, denying institution of *Inter Partes* Review ("IPR") under its broader claim construction standard because "the message [Wabtec] relies on as the interrogation does not appear to reach the crossing at all." Ex. A at 24.  And Siemens' PTAB expert, Mr. John Loud,[1] opining about why certain claims of the '461 Patent were ***valid*** under the same broad standard agreed with the PTAB, explaining that communication "between the train and the switch, which is the configurable device, [] is required by the claims."  Ex. B at 219:9–17.  He also explained that the Track Circuit Patents' claims require that "the track circuit doesn't need to evaluate its status until it's requested to do so," meaning that an interrogation message must be received by the track circuit before it knows to perform an evaluation of its status.  Ex. C at

---

[1]    This Court recently credited Mr. Loud's invalidity testimony in denying Wabtec's Motion for Preliminary Injunction.  C.A. No. 17-1687, D.I. 116 at 2.

17:23–18:12.  This is consistent with how the Track Circuit Patents describe their purported invention.  Ex. D at 5:22–27 ("the control module 110 will send the appropriate command via the transceiver 150 on the train *to the device* 180 *via its transceiver* 190"),[2] 2:53–56 ("when the track circuit receives the interrogation message, a test is initiated"), 7:17–23.  Indeed, without an arrangement where the interrogation message reaches the track circuit, the system cannot accomplish the need stated in the '953 Patent (and required by the claims) of "minimizing power consumption."  *Id.* at 2:30–34.

There is no evidence in the record that any message from the train reaches a configurable device or track circuit.  Similarly, there is no evidence in the record that the train listens for a response from the configurable device or track circuit.  In fact, the evidence (including expert opinions) adduced by both parties shows that the pertinent messages in the Wabtec system are sent from the train to a Wayside Interface Unit ("WIU"), but *do not reach* a configurable device (or track circuit transceiver).  Further, the evidence confirms that messages received by the train originate at a WIU, *not* a configurable device (or track circuit transceiver).

Siemens' only apparent response is that this Court's construction does not require the claimed interrogation message to reach the configurable device (or track circuit).  This argument ignores the Court's actual, reasoned analysis; the PTAB's findings; and Siemens' own experts' conclusions when arguing for validity, about what the claims require.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

Fact and expert discovery are now closed (except for one holdover deposition of a Siemens expert on invalidity issues) and trial is scheduled for January 2019.  Resolution of this motion in Wabtec's favor will simplify the issues presented at trial and will eliminate four of the

---

[2]      All emphasis added unless otherwise noted.

12 asserted patents (and 21 of the asserted 42 claims) Siemens intends to present to the jury.

The only product Siemens has accused of infringing the Interrogation Patents is I-ETMS, so resolution of this motion in Wabtec's favor eliminates the Interrogation Patents from this case.

## III.    STATEMENT OF FACTS



**Wabtec's I-ETMS**

The above diagram illustrates the pertinent components (and associated message flow) in the Wabtec I-ETMS system for purposes of the Interrogation Patents.  Siemens' infringement expert, Dr. Nabil Ghaly, opines that the I-ETMS onboard unit allegedly transmits two relevant messages from the train to the WIU: a GetWIUStatus message and a Beacon Request message (5200).  Ex. E at ¶113.  These messages, referred to herein as the "Train-Initiated Messages," correspond to the blue arrow above.  Dr. Ghaly also opines that Wabtec's I-ETMS onboard unit receives one relevant message:  a "WIUStatus" message sent from the WIU to the train.  Ex. E at ¶113.  This message is represented by the green arrow in the diagram above.  While data must be transmitted from the configurable devices/track circuits to the WIU (represented by purple arrows above) so that the WIU can provide such information to the train, there is no evidence in the record about the protocol for or content of those messages or that the messages are sent in response to any received I-ETMS message.

The parties' experts agree that Train-Initiated Messages "are sent from a train to a WIU, and the WIUStatus message is sent from a WIU to a train."  Ex. F at ¶56; *see also* Ex. J at ¶129.  Moreover, the parties' experts agree that the Train-Initiated Messages "do not reach an

underlying configurable device." Ex. F at ¶15.[3]

There is no dispute that a WIU is not a configurable device. Ex. G at 133:8–11.

There is no dispute that the WIUStatus message originates at the WIU, not at any configurable device or track circuit. Ex. F at ¶56.

There is also no dispute that the same transceiver on the train and the same transceiver at the WIU send the Train-Initiated Messages and the WIUStatus message, respectively, regardless of the track circuit/switch/signal I-ETMS system is seeking information about. Ex. G at 188:5–18; Ex. I at 116:7–9, 121:6–10.

As explained in more detail herein, the claims of the Interrogation Patents require an additional arrow that neither party avers is present in I-ETMS:  a message from the WIU to the configurable devices/track circuits.  There is a corresponding dearth of evidence of any message from a configurable device or track circuit being sent, directly or indirectly through an intervening device, to the train.  The lack of these messages is fatal to Siemens' case.

## IV.    LEGAL STANDARDS

### A.    Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  If the moving party carries its

---

[3]    Siemens' sole expert witness to analyze any I-ETMS source code (albeit in reply only) did not read the Interrogation Patents and, like Mr. Loud, was not tainted by Siemens' tortured infringement theories.  Ex. J at ¶3.  That expert agreed in deposition that statements in his report that the Train-Initiated Messages are sent to a "switch" were inaccurate and should have said that such messages were sent to the "WIU."  Ex. J at ¶129; Ex. K at 23:19–24:18.

burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (quotations omitted).  The Court "draw[s] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

### B.      Non-Infringement Standard

Summary judgment of non-infringement may be granted "if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents." *St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 2012 WL 1015993, at *9 (D. Del. Mar. 26, 2012) (Stark, J.).

To prove literal infringement, Siemens must show that the accused product contains each and every limitation of the asserted claims.  *See Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1317 (Fed. Cir. 2016).  Infringement under the Doctrine of Equivalents ("DOE") is determined on an element-by-element basis—not based on overall equivalency of two products as a whole.  *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997). To prove an equivalent within an accused product, Siemens must show that there is a part of an accused product that performs substantially the same function in substantially the same way to

achieve substantially the same result as a claim limitation.  *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).  However, because DOE "necessarily adds uncertainty to the scope of patent claims, and thereby detracts from the public notice function of patent claims," its applicability is limited.  *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 727 (Fed. Cir. 2002); *Warner-Jenkinson*, 520 U.S. at 29).

## V.    ARGUMENT

Wabtec has consistently asserted that I-ETMS does not infringe the Interrogation Patents because messages from the train do not reach the configurable device/track circuit.  Dr. Ghaly has consistently responded to Wabtec's positions across the Interrogation Patents, citing back to the same reasons he set forth regarding the '461 Patent in his analysis of the '860 Patent, the '953 Patent, and the '774 Patent.  Ex. E at ¶¶118–19, 131 ('461 Patent), 274–75 ('860 Patent), 359-60 ('953 Patent), 420–21 ('774 Patent); Ex. F at ¶¶56 ('461 Patent), 62 ('860 Patent), 69 ('953 Patent), 88 ('774 Patent).   Dr. Ghaly's opinion has been premised on an incorrect application of the Court's claim construction.  Under any reasonable application of the Court's claim construction, as described herein, I-ETMS cannot infringe the Interrogation Patents.

### a.    The Interrogation Patents' Claims Require Messages To Reach Configurable Devices/Track Circuits

Each asserted claim of the Interrogation Patents requires "transmitting . . . to [a/the next] configurable device" or "transmitting to a track circuit transceiver."  D.I. 165 at 13.  The Court construed these limitations as "sending a message to [a] configurable device []/sending a message to a transceiver associated with a selected track circuit."  D.I. 165 at 13.  It correctly articulated the parties' claim construction dispute:  "whether the claimed transmission must be sent directly to a device or may ***also proceed indirectly by way of an intervening device***."  D.I.

165 at 13.  The Court resolved this dispute, stating that the Interrogation Patents:

> "[E]xplain[] that the interrogation message is ***sent to a specific, targeted device***, *see, e.g.*, '953 patent at cl. 1 ('transmitting . . . to a track circuit transceiver associated with a track circuit'); '461 patent at cl. 1 ('transmitting . . . to a configurable device near the train'), and that the purpose of the interrogation message is to get status information ***from the device being interrogated***, *see, e.g.*, '953 patent at cl. 1 ('the response including an indication as to a condition of a section of track monitored by the track circuit'); see also '461 patent at 1:48-53 ('The present invention . . . provid[es] a computerized train control system in which a control module . . . continuously ***interrogates the device*** to determine its status as the train approaches ***the device***, and forces an engineer/conductor to acknowledge any detected malfunction.')."

D.I. 165 at 13.  The Court also found that "the specification makes clear that the train's transceiver 'can be configured for any type of communication, including communicating through rails or wireless' or 'with a dispatcher.'"  D.I. 165 at 14.  This finding is based, at least in part, on Siemens' own arguments that the term "'transmitting' . . . permit[s] communication between the train and the configurable device/track circuit ***to be routed through intervening devices such as wayside interface units ('WIU') (Siemens' position), or whether instead all such communications must be 'direct.'***"  D.I. 107 at 10.  Siemens also noted that "the 'targeted request' portion of Siemens' construction comes from the claimed requirement that the train send a request ***to a particular device***."  D.I. at 8 n.4.

Siemens made it clear that while it believed "'indirect' communications between a train and configurable device (i.e., communications ***through*** an intervening device)" are contemplated, communications still must be ***between the train and the configurable device***.  D.I. 119 at 9.  Siemens' counsel articulated this position at the claim construction hearing:  the word interrogation "suggests that you are not just sending [the interrogation message] to any and all configurable devices, you are determining one thing, the one [configurable device] near the train [], and sending it ***to that one***."  Ex. L at 38:20–39:4; s*ee also*, Ex. O at 20 ("[T]he train will send an interrogation message ***to the device***, either directly or through a wayside interface unit, or

WIU, in communication with the device."), 24.   While the Court's claim construction order contemplates the required communications can take any path between the train and the configurable device/track circuit, the communications must nonetheless flow from the train and ultimately reach configurable device/track circuit.  D.I. 165 at 14.

Each of the Interrogation Patents also requires "listening for a response from the configurable device" or "listening for a response from the track circuit transceiver."  The Court was not asked to construe these terms because the plain meaning confirms that the entity doing the listening (the train) is listening for communications *from the configurable device or from the track circuit transceiver*.  Under any reasonable claim interpretation, the "response" must originate at the configurable device or track circuit and be delivered to the train.

Confirming that the Interrogation Patents require the interrogation message to reach the claimed configurable device, Siemens' PTAB expert, Mr. Loud, testified (under the PTAB's "broadest reasonable interpretation" standard):

> Q.      So does interrogation mean directly [sic - directed] to a particular WIU or
>          to a particular configurable device?
>
> A.      Configurable device.

Ex. B at 183:15–17.  Mr. Loud went on, explaining that a message directed to a WIU is not an "interrogation message" because it is not directed to a particular configurable device; "there could be multiple devices per WIU."  *Id*. at 183:22–184:3.  He also explained that interrogation messages must actually reach configurable devices.  *Id*. at 183:7–21, 218:17–19, 219:9–22.

Mr. Loud similarly confirmed, arguing for validity of the Track Circuit Patents, that inherent in the interrogation message portion of the claims is a requirement that the interrogation trigger a test at the track circuit, ensuring that the reduced power consumption goal of Track Circuit Patents was achieved.  Ex. C at 17:23–18:12.  In order to accomplish this, some form of

signal—message or otherwise—must reach the track circuit. *Id.*

Siemens' arguments, this Court's constructions (and the underlying support for these constructions), the application of claim language to prior art in the PTAB, and Siemens' experts' interpretation of the claims in arguing for validity, are all consistent with the only reasonable interpretation of the claims:  the interrogation message ***must reach the configurable device or track circuit***.   Ex. L at 38:20–39:4; D.I. 165 at 13; Ex. A at 24; Ex. B at 219:9–17; Ex. C at 17:23–18:12.[4]  This is also consistent with the Interrogation Patents' specifications, which describe saving power by ensuring that configurable devices/track circuits are in a low power mode until they are awoken by receipt of a message from the train; that is, their purported benefits inure from the train initiating communications ***with*** the configurable device/track circuit with messages to those devices.  Ex. M at 5:28–35; Ex. D at 7:18–24.

For simplicity, Wabtec has provided a block diagram of the architecture covered by the plain meaning of the Interrogation Patents' claims, where messages are sent from the train to the device and vice versa (albeit potentially through a WIU under the Court's construction):



As the diagram indicates, there can be no response from the interrogated device where (as is undisputedly the case in I-ETMS) no message ever reaches the configurable device/track circuit.

---

[4]   Siemens appears to have realized it cannot succeed on literal infringement, and through its expert expands this Court's construction .  *See* Ex. E at ¶131 ("the Court has already rejected any requirement for messages from the train to reach a configurable device and vice versa", reiterated at ¶359 for the Track Circuit Patents).  Dr. Ghaly's opinion as to the meaning of the claims is both a misread of the Court's order and at odds with the far more reliable testimony of Siemens' PTAB expert (under a broader claim construction standard and unconcerned with preserving infringement) and the arguments made by Siemens' counsel during claim construction (untethered to infringement) in this case.

I-ETMS instead mirrors the prior art Mr. Loud's testimony distinguished, where communications occur between a train and a WIU, not a train and a configurable device.

### b.  I-ETMS Does Not Literally Infringe The Interrogation Patents

#### i.  I-ETMS Messages Never Reach Configurable Devices

To infringe the Configurable Device Patents, Siemens must show that an I-ETMS-equipped train (1) sends an interrogation message that reaches the configurable device; and (2) receives a response message that originates at the configurable device.  It can do neither.

The only messages Dr. Ghaly relies on as the claimed "interrogation messages" are the "GETWIUStatus" message and the "Beacon Request" message.  Ex. E at ¶¶113–17.  He does not assert that either message reaches a configurable device, likely because neither message does.  Dr. Souri's analysis further confirms that the source code for these messages requires that they are sent to a WIU, not any configurable device.[5]  Ex. K at 23:19–24:18; Ex. J at ¶129.  The undisputed evidence establishes that the identified I-ETMS messages do not reach a configurable device, meaning I-ETMS cannot infringe the Configurable Device Patents.

Similarly, the WIUStatus message that Dr. Ghaly relies on as the sole "response" required by the Configurable Device Patents unsurprisingly comes from the WIU, not any configurable device.  Ex. E at ¶127.  Because I-ETMS messages do not reach a configurable device, no configurable device responds with the claimed response message.

#### ii.  I-ETMS Messages Never Reach Track Circuits

To infringe the Track Circuit Patents, Siemens must show that an I-ETMS-equipped train (1) sends an interrogation message that reaches a track circuit; and (2) receives a response message that originates at the track circuit.

The only messages Dr. Ghaly relies on as the claimed "interrogation messages" are the

---

[5]  Dr. Ghaly confirmed a WIU cannot be the claimed configurable device.  Ex. G at 133:8–11.

"GETWIUStatus" message and the "Beacon Request" message. Ex. E at ¶¶354–357. He does not assert that either message reaches a track circuit; neither message does. Dr. Souri's analysis further confirms that the source code for these messages requires that they are sent to a WIU, not to any track circuit. Ex. K at 23:19–24:18; Ex. J at ¶129. Accordingly, the undisputed evidence establishes that I-ETMS does not infringe the Track Circuit Patents.

Similarly, the WIUStatus message that Dr. Ghaly relies on as the sole "response" required by the Track Circuit patents unsurprisingly comes from the WIU, not any track circuit. Ex. E at ¶¶363–365. Because I-ETMS messages do not reach a track circuit, no track circuit responds with the claimed response message.

### c. Siemens Cannot Defeat Summary Judgment Using the Doctrine of Equivalents ("DOE")

Siemens articulated for the first time in Dr. Ghaly's opening expert report a DOE theory that concedes I-ETMS does not literally infringe the Interrogation Patents as no messages reach the configurable device/track circuit. Ex. E at ¶¶121, 131, 359. Siemens' position is essentially that train/WIU messaging is "close enough." *Id.* This argument fails for three reasons.[6]

First, Siemens' DOE arguments should be stricken as untimely raised. D.I. 254; D.I. 256; *see also Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272 (Fed. Cir. 2012); *Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter*, 2011 WL 5554312, at *5–6 (C.D. Cal. Nov. 14, 2011).

Second, Siemens' DOE theory fails as a matter of law because it vitiates the very limitations that cause Siemens' literal infringement theories to fail: the interrogation message is ***sent to a configurable device*** and that train listens for a response ***from the configurable device/track circuit***. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005);

---

[6] To the extent not obviated by this motion, Wabtec will present evidence at trial as to why the I-ETMS functionality does not meet the test for equivalence because it is substantially different than the claimed messaging.

*see also Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950–51 (Fed. Cir. 2006).  The expansion of claim scope Siemens proposes would also ensnare the very prior art the PTAB ruled was insufficient to show the claimed interrogation message by virtue of that message not reaching the configurable device.  Ex. A.

Third, the statements made by Siemens and its expert in support of validity of the Interrogation Patents at the PTAB amount to prosecution history estoppel and Siemens is barred from asserting infringement theories to the contrary now.  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (patent owner statements during IPR are "akin to prosecution disclaimer").  In particular, Siemens' experts and attorneys have argued that the interrogation message must reach the configurable device.  Ex. B, 219:9–17; *see, e.g.*, Ex. N at 10 (Siemens agreeing that communications must be "***between the train and the configurable device***"), 11 (Siemens arguing that "the specification repeatedly explains that the train '***interrogates the device***'"), and 25 (Siemens arguing the prior art fails to disclose "transmission of a targeted request for status information from the train ***to a specific configurable device***").  Mr. Loud has also explained that the prosecution of the '461 Patent (a Configurable Device Patent) is relevant to the Track Circuit Patents.  Ex. C at 60:10–15.  These statements, made to distinguish the prior art, estop Siemens from expanding the scope of its patent claims through DOE to capture what it already told the public is not covered.  *Aylus*, 856 F.3d at 1362.

## VI.   CONCLUSION

There is no dispute that I-ETMS does not send an interrogation message to a configurable device/track circuit transceiver, or that I-ETMS never receives a response from the configurable device/track circuit transceiver.  Wabtec cannot infringe the Interrogation Patents as a matter of law, so summary judgment of non-infringement of these patents is warranted.

Dated:  August 31, 2018

**K&L GATES LLP**

/s/ Steven L. Caponi
Steven L. Caponi, Esq. (#3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Phone: 302.416.7080
steven.caponi@klgates.com

-and-

Alan L. Barry, Esq.
Jason A. Engel, Esq.
Benjamin E. Weed, Esq.
Devon C. Beane, Esq.
Katherine L. Hoffee, Esq.
Erik J. Halverson, Esq.
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602
Phone: 312. 372.1121
alan.barry@klgates.com
jason.engel@klgates.com
benjamin.weed@klgates.com
devon.beane@klgates.com
katy.hoffee@klgates.com
erik.halverson@klgates.com

*Attorneys for Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on August 31, 2018 to all counsel of record via email.


/s/ Steven L. Caponi
Steven L. Caponi (# 3484)