# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS MOBILITY INC., | : |
| | : |
|     Plaintiff, | : |
| v. | :    C.A. No. 16-284-LPS-CJB |
| | : |
| WESTINGHOUSE AIR BRAKE | : |
| TECHNOLOGIES CORPORATION | : |
| (d/b/a WABTEC CORPORATION) and | : |
| WABTEC RAILWAY ELECTRONICS, | : |
| INC., | : |
| | : |
|     Defendants. | : |

Jack B. Blumenfeld, Karen Jacobs, and Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Mark Supko, Kathryn L, Clune, Vincent J. Galluzzo, and Joshua M. Rychlinski, CROWELL & MORING LLP, Washington, DC

Jacob Z. Zambrzycki, CROWELL & MORING LLP, New York, NY

    Attorneys for Plaintiff


Steven L. Caponi, K&L GATES LLP, Wilmington, DE

Alan L. Barry, Jason A. Engel, Benjamin E. Weed, Devon C. Beane, Katherine L. Hoffee, and Erik J. Halverson, K&L GATES LLP, Chicago, IL

    Attorneys for Defendants


## **MEMORANDUM OPINION**

December 17, 2018
Wilmington, Delaware

UNSEALED ON
APRIL 1, 2019

**STARK, U.S. District Judge:**

Plaintiff Siemens Industry, Inc. ("Siemens") brought this patent infringement suit against Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc. (collectively, "Wabtec").[1] Presently before the Court are Wabtec's Motion for Partial Summary Judgment of No Pre-Suit Damages (D.I. 289) and Wabtec's Motion for Partial Summary Judgment of Non-infringement of the Interrogation Patents (D.I. 298).[2] Having considered the parties' briefs (*see* D.I. 290, 299, 314, 321, 332, 343), numerous exhibits (*see* D.I. 291, 300, 318, 323, 333, 334, 344, 345), expert declarations (*see* D.I. 316), and oral argument (*see* D.I. 394 ("Tr.")), the Court will grant Wabtec's Motion for Partial Summary Judgment of No Pre-Suit Damages (D.I. 289) and deny Wabtec's Motion for Partial Summary Judgment of Non-infringement of the Interrogation Patents (D.I. 298).

## I.   LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden

---

[1] The asserted patents include U.S. Patent Nos. 6,996,461, 7,236,860, 6,845,953, 7,036,774, 7,092,801, 7,079,926, 7,200,471, and 6,824,110 (collectively, the "OBU patents"), U.S. Patent Nos. 8,714,494 and 9,233,698 (the "BOS patents"), and U.S. Patent Nos. 7,467,032 and 7,742,850 (the "EOT patents").

[2] Also pending are Siemens' *Daubert* Motion to Exclude Portions of the Expert Opinions of Christopher Martinez (D.I. 305), Motion for Reconsideration (D.I. 396), and Motion for Leave to Serve a Revised Expert Report of Its Damages Expert (D.I. 398). As the Motion for Reconsideration and Motion for Leave are not yet fully briefed, this Opinion will not address those motions. Since the issues in dispute in Siemens' *Daubert* Motion were narrowed (*see* D.I. 393) as a result of the Court's Order granting Wabtec's *Daubert* Motion to Exclude the Testimony of Andrew W. Carter Regarding Lost Profits for the OBU and BOS Patents (*see* D.I. 391), and that Order is the subject of the Motion for Reconsideration, this Opinion also will not address Wabtec's *Daubert* Motion.

of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## II. DISCUSSION

### A. Wabtec's Motion for Partial Summary Judgment of No Pre-Suit Damages

Wabtec seeks summary judgment of no pre-suit damages based on Siemens' failure to provide actual or constructive notice to Wabtec pursuant to 35 U.S.C. § 287. The Court will grant this motion.

#### 1. Actual Notice

"[T]he purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). Actual notice "is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *Id.* (finding actual notice requirement satisfied by letter stating that one particular patent may be infringed by certain devices and offering license). "It is not controlling whether the patentee threatens suit, demands cessation of infringement, or offers a license under the patent." *Id.* Still, "notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires

3

the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). While "general letters referring to the patent and including an admonishment not to infringe do not constitute actual notice," an "unqualified charge of infringement" is not required. *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) (internal quotation marks omitted). Rather, "letters that specifically identify a product and offer a license for that product do constitute actual notice." *Id.*

"It is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187; *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001) ("[W]hether or not the alleged infringer subjectively believed that the patentee's letter was a charge of infringement has no bearing on the adequacy of notice."). However, under some circumstances, evidence of the infringer's subjective belief as to whether the patentee was charging it with infringement may be relevant to determining whether the patentee's communication was actually a charge of infringement. *See, e.g.*, *Lucent Techs. Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1180, 1185 (S.D. Cal. 2007) (stating that "admissions made in [internal] emails [of alleged infringer] may constitute at least some evidence that [patentee] actually communicated accusations of infringement to [alleged infringer]"); *Hoover Co. v. Bissell Inc.*, 38 F. Supp. 2d 519, 525 (N.D. Ohio 1999).

While several communications are discussed in the briefing, at oral argument Siemens relied principally on three that, Siemens contended, a reasonable juror could look at in totality and find actual notice of infringement was provided to Wabtec as of September 2009. (*See* Tr. at

19, 26)[3] First, in 2006, Quantum, Siemens' predecessor-in-interest with respect to most of the asserted patents, gave a presentation to BNSF, Wabtec's first customer for the ETMS system. (*Id.* at 19) The slide deck for the presentation stated that the ETMS system "[m]ay have implications" in relation to several identified patents. (*Id.* at 19-20) BNSF then emailed the presentation to Wabtec, adding that "BNSF would like to meet with [Wabtec] as soon as possible to discuss any potential implications in regards to our continued use of ETMS and these patent questions." (D.I. 323 Ex. 7) A few months later, Quantum sent a letter directly to Wabtec with the subject line "Quantum Engineering Train Control Patent Portfolio." (D.I. 291 Ex. D) The letter stated:

> [U]se of Wabtec's ETMS system . . . has come to our attention. You should be aware that Quantum has built a substantial portfolio of patents that may relate to train control systems such as your ETMS system. Copies of selected Quantum patents relevant to train control systems are attached for your reference. We trust you will take adequate precautions to avoid infringement of these Quantum patents.

(*Id.*) Finally, in September 2009, Invensys, another predecessor of Siemens, emailed Wabtec a presentation that discussed licensing options for several listed PTC and EOT patents. (*See* D.I. 323 Ex. 4) The cover email stated, "I look forward to receiving any similar IP options from your side." (*Id.*) John Paljug, President of Invensys at the time, testified that Invensys told Wabtec "that there were some patents that may be of interest . . . to Wabtec" and "if they have some

---

[3] While other communications were discussed in the briefing, including a 2007 letter related to a non-asserted patent (D.I. 291 Ex. E) and a 2014 letter (D.I. 291 Ex. P), Siemens acknowledges that these are "less relevant" than the three communications discussed in this Opinion. (Tr. at 25) Consideration of all of the communications to which Siemens has pointed does not alter the outcome. A reasonable juror, taking all the evidence in the light most favorable to Siemens, could not find that Siemens provided actual notice to Wabtec.

patents that . . . might have interest of us, maybe there's some opportunities to do some things." (D.I. 291 Ex. O at 27) He did not believe that specific patents were identified or discussed. (*Id.*)

The Court agrees with Wabtec that these communications, singly or in combination, do not satisfy the requirements for actual notice of infringement. Siemens' predecessor, Quantum, communicated with BNSF, a Wabtec *customer*, but did not initially communicate with Wabtec directly. While BNSF provided the Quantum slide deck to Wabtec, Quantum did not. The letter Quantum thereafter sent to Wabtec stated merely that Quantum's patents "may relate to train control systems such as your ETMS system," which is notice that the patents exist but not a specific charge of infringement. (D.I. 291 Ex. D) While Wabtec acknowledges that stating "you may infringe" and offering an "aba[t]ement for that infringement" is "enough to trigger" actual notice, Wabtec also correctly observes that the 2006 letter contains no offer of a license or demand for cessation. (Tr. at 33-34) "[G]eneral letters referring to the patent and including an admonishment not to infringe do not constitute actual notice." *Minks*, 546 F.3d at 1376. The 2009 meeting did concern licensing options for Invensys' patents, but there is no evidence of any express or implied charge of infringement. (*See* D.I. 323 Ex. 4) Indeed, the President of Invensys testified that specific patents were not identified or discussed. (*See* D.I. 291 Ex. O at 27)

Even assuming it is proper to consider evidence of *Wabtec's* understanding of the 2006 and 2009 communications, the outcome is no different. Siemens points to Wabtec's actions after learning from its customer, BNSF, of the 2006 presentation. (*See* Tr. at 21) That Wabtec then hired a law firm to review Siemens' patents for purposes of considering whether Wabtec's products infringed suggests that Wabtec complied with Quantum's request to "take adequate precautions to avoid infringement;" it cannot be found to confirm that Wabtec understood

6

Quantum was actually charging Wabtec with infringement. Siemens points to no evidence that Wabtec hired a law firm ***because*** it understood that it was being charged with infringement. Siemens does note that, as a result of the Quantum patents, Wabtec added a provision to its 2007 supply contract with METRA that provides, Wabtec "has disclosed to METRA that a third party has advised [Wabtec] that the ETMS may infringe some of the third party's patents." (D.I. 323 Exs. 10, 11) Siemens also refers to a 2013 email from an in-house attorney at Wabtec to a new law firm that states, "[i]n July, 2006, Quantum . . . sent a letter to Wabtec's CEO alleging that the ETMS system which WRE sold to Metra (Chicago) infringed 17 different Quantum patents." (*Id.* Ex. 8) In the Court's view, this internal Wabtec communication (to its own attorney) written seven years after receipt of the letter from Quantum cannot, in the context of the totality of the evidence (including the fact that the 2006 Quantum letter contains no offer for a license or demand for cessation), be reasonably found to mean that in 2006 (or even by 2009) Siemens had actually given notice of a specific charge of patent infringement. *See Minks*, 546 F.3d at 1376.

Viewing the 2006 and 2009 communications (which were separated by three years) in totality, and even accounting for the evidence of Wabtec's contemporaneous reaction to it, a reasonable juror could not find that Wabtec was "informed of the identity of the patent and the activity that is believed to be an infringement" which was "accompanied by a proposal to abate the infringement." *SRI*, 127 F.3d at 1470. Accordingly, no reasonable juror could find that Siemens provided actual notice of infringement.

### 2. Constructive Notice

"A patentee who makes, uses, or sells its own invention is obligated to comply with the marking provisions to obtain the benefit of constructive notice." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). The initial burden is on the defendant to identify particular

unmarked products. *See Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 688 (D. Del. 2017). Once this is done, the patentee has the burden of proving compliance with the statutory notice requirements, which presents a question of fact. *See Maxwell*, 86 F.3d at 1111. When third parties are involved, courts follow a rule of reason approach. *See id.* Marking "must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537-38 (Fed. Cir. 1993) (finding full compliance with § 287 was not achieved until patentee "consistently marked substantially all of its patented products, and it was no longer distributing unmarked products"); *see also SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1378 (Fed. Cir. 2010) ("Constructive notice requires the record to show that the patentee consistently marks substantially all of its patented products.") (internal quotation marks omitted).

"The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method." *Am. Med.*, 6 F.3d at 1538. "Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions." *Id.* at 1538-39.

It is undisputed that Siemens does not mark any product with its EOT or BOS patents. (*See* D.I. 321 at 16) Nonetheless, Siemens contends that with respect to the EOT patents, it has provided actual notice of the '032 patent (a contention the Court has already considered and rejected above) and that the asserted claims of the '850 patent are method claims, which do not require marking. (*See id.*) However, as Wabtec correctly notes, Siemens initially asserted an apparatus claim from the '850 patent, so the marking statute is applicable to that patent. *See Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, 2017 WL 5165606, at *2-3 (E.D. Tex. Oct. 15,

8

2017) ("To further conclude that application of the statute turns on a patent holder's decision to drop apparatus claims at some point during litigation defies logic."). With respect to the BOS patents, Siemens argues that marking is not required because its embodiments are "software to be run on a server that is supplied to customers directly through an electronic delivery service." (D.I. 321 at 16) However, as Wabtec explains (*see* D.I. 290 at 11), software can be marked in various ways, such as in the electronic transfer message or as a page in the program.

Turning to the OBU patents, the pertinent products are Siemens' Train Sentinel and the OBUs that Wabtec developed for BNSF and CSX. With respect to Train Sentinel, Mark Kane, an OBU patent inventor, testified that Train Sentinel was marked with patent(s) via a sticker label on the box of the product, but he has no photographs or documentation to corroborate his recollection. (D.I. 323 Ex. 19 at 125) James Shockley, another OBU inventor, testified that "[i]t was general Quantum procedure that if a patent was issued it would be so marked on the product" and that "[i]f something had a patent applied for that we felt strongly was going to get a patent it might say patent pending." (*Id.* Ex. 20 at 60) Mr. Shockley further testified that these practices "would be reflected in the manufacturing drawings." (*Id.*) No such manufacturing drawings are in the record. (*See* D.I. 332 at 7 n.3) "[E]vidence of current company policy and practice, without any other evidence of compliance with the marking requirement during the relevant time period, is insufficient to overcome a motion for summary judgment." *Von Holdt v. A-1 Tool Corp.*, 714 F. Supp. 2d 863, 871 (N.D. Ill. 2010).

Even assuming that Mr. Shockley's testimony is evidence of company policy and practice and Mr. Kane's testimony is "other evidence of compliance," the issue then becomes whether Siemens (or its predecessors) complied with company policy by marking every Train Sentinel product sold by it and its licensees with the OBU patents issued or pending at the time.

9

A reasonable factfinder could not, based on the record, find the requisite substantial consistency with respect to marking.

Siemens' predecessor Quantum licensed its OBU patents to BNSF in 2006 and Siemens' predecessor Invensys licensed the '110 patent to CSX. (*See* D.I. 290 at 8, 9 n.4)  Both licenses required marking. (*Id.*)  The supplier of the end products for both BNSF and CSX was actually Wabtec. (*Id.*)  It is undisputed that Wabtec did ***not*** mark those products with the Quantum and Invensys patents. (*Id.*; D.I. 321 at 14)

As Wabtec points out (*see* D.I. 332 at 7), even products made by an alleged defendant-infringer for a third-party licensee of the plaintiff-patentee must be considered for purposes of the notice requirement. *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 262 F. Supp. 2d 358, 366 (D. Del. 2003); *see also generally CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072-73 (Fed. Cir. 2009) (noting that patent infringement statute's reference to "make, use, and sell" includes right of patentee to "have [product] made by a third party").[4]

Accordingly, considering Train Sentinel as well as the products Wabtec made for BNSF and CSX as licensees of Siemens (or its predecessors), a reasonable juror could not find that Siemens "consistently mark[ed] substantially all of its patented products, and it was no longer distributing unmarked products." *Am. Med.* 6 F.3d at 1537.  Accordingly, Siemens cannot meet its burden to prove constructive notice.  The Court will grant Wabtec's motion for summary judgment.

---

[4] Siemens' attempt to distinguish *Tulip Computers* (*see* D.I. 321 at 15) is unpersuasive.

### B. Wabtec's Motion for Partial Summary Judgment of Non-infringement of the Interrogation Patents

Wabtec seeks summary judgment of non-infringement of the '461, '860, '953, and '774 patents (collectively, the "Interrogation Patents"). Claim 1 of the '461 patent is representative and requires "transmitting an interrogation message to a configurable device near the train" and "listening for a response from the configurable device."[5] ('461 patent, cl. 1) The Court construed "interrogation message" as "a targeted request that requires a response containing status information." (D.I. 165 at 11) The Court noted that "the patent explains that the interrogation message is sent to a specific, targeted device, and that the purpose of the interrogation message is to get status information from the device being interrogated." (*Id.* at 12) (citations omitted) The Court construed "transmitting . . . to a configurable device" as "sending a message to a selected configurable device." (*Id.* at 13) The claim construction dispute concerned "whether the claimed transmission must be sent ***directly*** to a device or may also proceed ***indirectly*** by way of an intervening device." (*Id.*) (emphasis in original) The Court stated, "[n]othing in the claims requires that the transmission be direct;" rather, "the train's transceiver 'can be configured for ***any*** type of communication, including communicating though rails and wireless' or 'with a dispatcher.'" (*Id.* at 14-15) (quoting '461 patent at 2:66-3:6; emphasis in Court's earlier opinion)

It is undisputed that the OBU of the accused I-ETMS sends a GetWIUStatus message and a Beacon Request message to a WIU. (*See* D.I. 299 at 3) It is also undisputed that the WIU sends a WIUStatus message to the train. (*See id.*) It is further undisputed that the WIU is not literally a configurable device or track circuit. (*See id.*) Siemens contends that the WIU that

---

[5] The '774 and '953 patents refer to a "track circuit transceiver" instead of a "configurable device," but the arguments are the same for both sets of claims, unless otherwise noted.

11

receives the message is associated with the particular wayside device of interest, pointing out that Wabtec concedes that "data must be transmitted from the configurable devices . . . to the WIU . . . so that the WIU can provide such information to the train." (*Id.*) Wabtec counters that "there is no evidence in the record about the protocol for or content of those messages or that the messages are sent in response to any received I-ETMS message." (D.I. 314 at 5) The dispute, then, is whether the Court's construction requires that the original interrogation message itself must reach the configurable device (Wabtec's position) or whether it is sufficient for the content of the message to effectively be transmitted between the WIU and the configurable device (Siemens' position).

Wabtec observes that there is no evidence in the record as to how the interrogation message gets from the WIU to the configurable device, arguing that, therefore, Siemens "will not be able to present any evidence that the interrogation message ever reaches a configurable device." (Tr. at 91-93) In Wabtec's view, Siemens has nothing more than speculation as to how the WIU works to convey messages to the configurable device, suggesting that even Wabtec itself does not know how the WIU is configured to communicate with the configurable device. (*See* Tr. at 94; D.I. 345 Ex. P (testimony of Jeffrey Kernwein)) Siemens counters that a reasonable juror could find that the interrogation message does, in fact, "reach" the device via the WIU, regardless of how exactly the WIU operates. (*See* D.I. 314 at 10-11)

The Court concludes that neither party's arguments are inconsistent with the Court's claim construction. Both views are supported by the parties' respective, competing experts. (*Compare* D.I. 300 Ex. E at 40-48 (Siemens' expert Dr. Ghaly) *with* D.I. 300 Ex. J at 52-53 (Wabtec's expert Dr. Souri)) Hence, the parties have presented a genuine dispute of material fact that will need to be resolved by trial. *See, e.g., EMC Corp. v. Pure Storage, Inc.*, 154 F.

Supp. 3d 81, 109 (D. Del. 2016) ("Expert testimony regarding whether the accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for the jury to resolve."); *In re Maxim Integrated Prods., Inc.*, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015) ("It is well-settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of a case.").

It follows that Wabtec is also not entitled to summary judgment with respect to Siemens' claims of infringement under the doctrine of equivalents ("DOE"). The Court is not persuaded that Siemens' DOE arguments are barred, for the reasons stated by Siemens. (*See* D.I. 314 at 14; Tr. at 100-05)

Accordingly, the Court will deny Wabtec's motion.

## III.   CONCLUSION

For the reasons stated, the Court will grant Wabtec's Motion for Partial Summary Judgment of No Pre-Suit Damages (D.I. 289) and deny Wabtec's Motion for Partial Summary Judgment of Non-infringement of the Interrogation Patents (D.I. 298). An appropriate Order follows.[6]

---

[6] At the hearing and in a subsequent letter (Tr. at 143; D.I. 393 at 2) the parties raised issues about the length and scope of the upcoming trial, scheduled to begin on January 14, 2019. The Court will direct the parties to advise it of their updated positions as to when Siemens shall be required to reduce its asserted claims to those that it will present at trial.

13