# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS MOBILITY INC. : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> WESTINGHOUSE AIR BRAKE : <br> TECHNOLOGIES CORPORATION : <br> (d/b/a WABTEC CORPORATION) and : <br> WABTEC RAILWAY ELECTRONICS, INC., : <br> : <br> Defendants. : | C.A. No. 16-284-LPS |

## MEMORANDUM ORDER

At Wilmington this **2nd** day of **January, 2019**:

Having reviewed the proposed final pretrial order ("PTO") filed by Plaintiff Siemens Mobility, Inc. ("Siemens" or "Plaintiff") and Defendants Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) and Wabtec Railway Electronics, Inc. ("Defendants," "Westinghouse," or "Wabtec"), **IT IS HEREBY ORDERED** that:

1. **Siemens' motion *in limine* ("MIL") No. 1**, to exclude evidence and argument regarding *inter partes* review proceedings ("IPR"), other litigations between the parties, and Westinghouse's patents, is **GRANTED IN PART** and **DENIED IN PART**. The jury will not be told anything about the existence of the IPRs or of other litigation between the parties. Westinghouse will not reference the IPRs to support its invalidity defenses and Siemens will not reference the IPRs to rebut invalidity. However, evidence that has been developed in an IPR or other litigation – including testimonial as well as documentary evidence – may be used at trial, provided that it is done without referencing the IPR or other litigation (beyond, if necessary, a

1

generic reference to "another matter") and subject to the Federal Rules of Evidence and the Court's procedures. With these protections, the probative value of the evidence is not substantially outweighed by the risk of jury confusion, unfair prejudice, or waste of time. *See* Fed. R. Evid. ("FRE") 403. While Westinghouse will not be permitted to argue or suggest that its accused products are covered by its own patents, there may well be proper purposes for introducing evidence of the existence of Westinghouse's patents (e.g., to support its invalidity defenses or its knowledge of Siemens' patents), so Siemens' request for a blanket exclusion of such evidence is unwarranted.

2. **Siemens' MIL No. 2**, to exclude fact witness testimony inconsistent with the Court's constructions of "vital" and "safety critical," is **GRANTED**. "Westinghouse agrees that evidence and testimony inconsistent with the court's claim construction on 'vital' and 'safety critical' should be excluded." (PTO Ex. 13 at Defs' Opp. at 1) Siemens' motion is directed only to testimonial evidence, not documents, and the Court will rule on objections to admission of documents (including PX0321) at trial, if necessary. The Court will also consider a request, if made, for a jury instruction to the effect that terms used in the patent may also appear in documents and, in the latter context, do not necessarily have the same meaning as they do when used in the patent.

3. **Siemens' MIL No. 3**, to exclude Dr. Kaufman's "improper" opinions regarding alleged prior art CBTM systems, is **DENIED**. The Court does not agree with Siemens that two documents post-dating the patents' critical dates are necessarily irrelevant to obviousness; a reasonable jury may agree with Westinghouse that these documents corroborate the existence of certain functionality in the CBTM systems prior to the critical date. (*See* PTO Ex. 14 at Defs'

Opp. at 2) ("Westinghouse witnesses will provide factual testimony establishing that the relied-upon functionality of CBTM was part of the system that existed in the prior art time frame; it will be properly incumbent upon the jury to decide the sufficiency of any corroboration evidence (including the exhibits Siemens seeks to exclude) . . . .") Dr. Kaufman, like all experts, will not be permitted to offer opinions that were not adequately disclosed prior to trial, but this does not preclude her from noting that her opinions are supported by testimony she hears at trial which is consistent with other evidence on which she disclosed her reliance prior to trial.

4. **Westinghouse's MIL No. 1**, to preclude Siemens from introducing evidence or argument concerning the Trainmaster Agreement, will be argued at the pretrial conference ("PTC") tomorrow.

5. **Westinghouse's MIL No. 2**, to preclude testimony, evidence, or argument regarding Westinghouse's revenues and size, is **GRANTED IN PART** and **DENIED IN PART**. Siemens does not oppose granting the motion to the extent it seeks to preclude evidence and argument regarding Westinghouse's overall revenues or a pending merger. (PTO Ex. 16 at Opp at 1) However, evidence of Westinghouse's total revenues from sales of positive train control products is relevant to damages, including convoyed sales and the commercial success of the accused products. Evidence of Westinghouse's "size," particularly relative to the size of the pertinent market, may also be relevant to damages, as recognized by several of the *Georgia-Pacific* factors. The Court does not agree with Westinghouse that the risk of "inflam[ing] the jury and skew[ing] the damages" (PTO Ex. 16 at Mot at 1) substantially outweighs the probative value of the evidence Westinghouse seeks to exclude. The jury will be carefully instructed on damages and both sides will have an opportunity to present damages evidence and to cross-

examine the other side's evidence.

6. **Westinghouse's MIL No. 3**, to preclude Siemens from presenting evidence of or mentioning the ongoing related litigation in this Court, is **GRANTED IN PART** and **DENIED IN PART**, subject to the limitations noted below. As "Siemens agrees[,] . . . neither party should make reference to other proceedings between the parties, including C.A. No. 17-1687." (PTO Ex. 17 at Opp at 1) However, as stated above in connection with Siemens' MIL No. 1, evidence – including testimonial and documentary evidence – that has been developed in other litigation, such as C.A. No. 17-1687, may be used at trial, provided that it is done without referencing the other litigation (beyond, if necessary, a generic reference to "another matter") and subject to the Federal Rules of Evidence and the Court's procedures. The Court agrees with Siemens that permitting the parties "to use relevant, admissible evidence from the 1687 Action without mentioning the underlying proceeding presents no risk of jury confusion and is consistent with the parties' Cross-Use Agreement." (PTO Ex. 17 at Opp at 2)

Considering the parties' "Miscellaneous Issues" (PTO Exs. 18 & 19):

1. The Court will permit Defendants to refer to themselves as Westinghouse and/or Wabtec and will refer to them by one or both names itself. Defendants have regularly been referred to as Wabtec throughout this litigation and many documents refer to them as such and there is no unfair prejudice to Defendants from Plaintiff or the Court continuing to do so. However, should Defendants now wish to refer to themselves as Westinghouse, there is also no unfair prejudice to Plaintiff from them doing so. The jury will be instructed that Defendants may be referred to as Wabtec or Westinghouse – and this practice is very unlikely to confuse the jury.

2. There is a strong presumption that the entirety of the trial proceedings, even when

relating to evidence designated during discovery as "Confidential" or "Attorneys' Eyes Only," will be open to the public. The Court is not inclined to close the courtroom for any part of this trial. Should either side wish for the Court to consider closing the courtroom, it should raise the issue at the PTC and be prepared, no later than the morning of the day on which closure is requested, to make a particularized showing, consistent with the law, as to why closure is warranted.

3. The parties shall be prepared to discuss at the PTC tomorrow whether the Court should require Siemens to further reduce the number of patents and/or claims being asserted at trial.

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE