MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
————
(302) 658-9200
(302) 658-3989 FAX

KAREN JACOBS
(302) 351-9227
(302) 425-4681 FAX
KJACOBS@MNAT.COM

Original Filing Date: February 4, 2019
Redacted Filing Date: February 5, 2019

REDACTED -- PUBLIC VERSION

The Honorable Leonard P. Stark                    *VIA ELECTRONIC FILING*
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

    Re:   *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp. (d/b/a Wabtec*
         *Corporation) et al.,* C.A. No. 16-00284 (LPS)
         Joint Status Report re Post-Trial Issues

Dear Chief Judge Stark:

    The parties respectfully submit this letter as a joint status report, setting forth their proposals regarding what further steps should be taken to conclude this litigation.

    1.    **Entry of Judgment**

    Siemens' Position: A Proposed Judgment to be entered on the January 25, 2019 Jury Verdict (D.I. 447) is attached hereto as Exhibit A. As both Siemens and Wabtec intend to file various post-trial motions as discussed below, the Proposed Judgment is not intended to be a Final Judgment, but instead would serve to trigger the time for filing post-trial motions on issues that were decided by the jury and Siemens' motions for additional relief.

    Wabtec's suggestion (set forth below) that "judgment cannot be entered" on the entire verdict finds no support in the law. Specifically, Wabtec contends that the liability verdict with respect to the '110 (horn activation) and '926 (movement authority) patents should be "set aside" in view of (i) the PTAB's recent Final Written Decision ("FWD") finding asserted claim 11 of the '110 Patent unpatentable, and (ii) the possibility that the PTAB may make a similar finding regarding asserted claim 4 of the '926 Patent in the future. However, it is well settled that an FWD has no preclusive effect until Siemens' appeal rights have been exhausted and the USPTO issues a certificate of cancellation. *See* 35 U.S.C. § 318(b); *Hologic, Inc. v. Minerva Surgical, Inc.,* 325 F. Supp. 3d 507, 518-19 (D. Del. 2018) (denying motion to dismiss based on FWD where appeal was pending and claims had not been cancelled); *Boston Scientific Corp. v. Edwards Lifesciences LLC,* C.A. No. 16-275-JFB-SRF (D. Del. Apr. 20, 2018) (Report and Recommendation) (D.I. 438) (denying motion to stay on patents that had been found unpatentable based on FWD); *cf. Personalized User Model LLC v. Google, Inc.,* C.A. No. 09-525-LPS (D.I 407) (D. Del. Oct. 31, 2012) (denying motion to stay notwithstanding that all

The Honorable Leonard P. Stark
February 4, 2019
Page 2

asserted claims had been rejected in final office actions);  *see also W. Falcon, Inc. v. Moore Rod & Pipe, LLC*, No. H-13-2963, 2015 WL 3823629, at *8 (S.D. Tex. June 18, 2015) ("Patentees may sue for infringement so long as a claim-at-issue has not been cancelled, and patent claims are not cancelled until a certificate issues after the *inter partes* review appeals are exhausted."). Also, most of the cases Wabtec relies on concern requests for a permanent injunction, which Siemens is not seeking, and thus those cases do not apply here.

    In essence, Wabtec is asking this Court to stay entry of final judgment on the jury's verdict against Wabtec with respect to the '110 and '926 Patents for well over a year pending completion of Siemens' appeal of the '110 Patent (and even longer if the PTAB makes an invalidity finding on the '926 Patent), even though the jury's verdict preceded the FWD on the '110 Patent and the PTAB has yet to issue an FWD on the '926 Patent.  There is no good reason why entry of judgment, post-trial motions and appeals in this case should not move forward with respect to the '110 and '926 Patents in the ordinary course.  If Wabtec's concern is that the jury's verdict could be upheld by the Federal Circuit and somehow render moot the PTAB's decision(s) on the '110 and '926 Patents, the Federal Circuit has made clear that neither the litigation nor administrative track holds priority over the other. *See Carrier Corp. v. Goodman Global, Inc*., 2014 WL 2042470, at *1–2 (D. Del. 2014) (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) (denying motion to stay and noting that "the administrative and judicial processes (which intersect only at the appellate level, that is, at the Federal Circuit) serve distinct functions with distinct procedures")).[1]

---

[1] Wabtec's authorities are inapposite to the facts at hand. *Prism Techs. LLC v. Sprint Spectrum L.P.* did not involve any parallel IPR proceedings. No. 18-1108, *slip op.* (Fed. Cir. Feb. 1, 2019). Moreover, the district court *had* entered judgment in the underlying case but stayed its execution pending appeal to the Federal Circuit (and only once the Federal Circuit affirmed the invalidity of the patents-in-suit was the judgment set aside). *Id.* at 2-3. A stay of execution of an entered judgment was likewise the issue in *Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, Case No. 08-60996-CIV, 2010 WL 2976859, at *5–6 (S.D. Fla. July 20, 2010). That is not the issue before the Court here. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.* is a one-page, unpublished Federal Circuit opinion from 25 years ago with limited analysis that was premised in part on the district court's incorrect conclusion "that the reexamination decision can have no effect on th[e] infringement suit even if the reexamination decision becomes final." 996 F.2d 1236 (Fed. Cir. 1993), and the opinion cannot be squared with the more recent *Fresenius* decision. Moreover, unlike here, damages had not yet been tried in *Standard Havens*, and the reexamination decision had already been affirmed once by the Board and was already up on appeal. *Id.* In *Ultratec, Inc. v. Sorenson Comms., Inc.*, another district court exercised its discretion to stay the action where the PTAB "had issued final written decisions invalidating all of the asserted claims" except for one, which was also subject to an IPR proceeding. Case No. 13-cv-346, 2015 WL 2248437, at *2, 4-5 (W.D. Wis. May 13, 2015). In contrast, here, only a single claim of a single patent (out of 8 adjudicated patents) has been found unpatentable, and its ultimate disposition will have no effect on the liability findings with respect to the other 7 patents (notwithstanding Wabtec's unsupported suggestion to the contrary).  That court's exercise of discretion in that proceeding in

The Honorable Leonard P. Stark
February 4, 2019
Page 3

Equally unfounded is Wabtec's suggestion that the jury's lump sum damages award for Wabtec's infringement of the OBU and BOS patents is somehow tainted by the FWD on the '110 Patent because the jury did not apportion its damages award on a patent-by-patent basis. First, Wabtec once again treats the asserted claim of the '110 Patent as if it had already been cancelled, which is both factually and legally wrong.  But in any event, Siemens' damages expert repeatedly explained to the jury, both on direct examination and while being cross-examined by Wabtec, why his reasonable royalty rate did not depend on the number of infringed PTC patents or what value might be ascribed to individual patents.

As Mr. Carter testified, the license on which he relied for his analysis was structured such that "there is no increase or decrease in the royalty no matter how many patents are in the agreement." Trial Tr. at 843:14-844:1. Thus, as Mr. Carter explained, "[i]f more patents come in as they did, as some of the patent applications turned into patents including ones in this case, it's not like Quantum got more money." Id. at 844:2-4. "And if patents drop out, for example, if patents are found to be invalid, [the licensee] doesn't get a refund. So the number of patents don't really matter." Id. at 844:4-6. He further noted that this was "a similar type of structure" to the other licenses that he considered as part of his analysis where, "[i]f the patents go up, the patents go down, the rate doesn't change." Id. at 844:9-14; see also id. at 881:9-883:10. Wabtec failed to offer any contrary evidence at trial, making the strategic decision not to have its damages expert testify, thus leaving Mr. Carter's analysis unrebutted. The jury was therefore entitled to accept Mr. Carter's opinion that Siemens should receive the same reasonable royalty for its PTC patents regardless of how many or which ones of the patents were ultimately found to be valid and infringed.[2]  And because Wabtec did not challenge the validity of Mr. Carter's analysis or the jury's finding in any of its JMOL submissions, nor challenge the jury instructions or special verdict form with respect to damages, it has waived the issue.

Accordingly, Wabtec offers no proper justification for delaying entry of judgment on the jury's entire verdict.[3]

_____

no way compels such a result here, or suggests that judgment cannot be entered, as Wabtec incorrectly contends.
    [2] "The general rule" of WesternGeco LLC v Ion Geophysical Corp. cited by Wabtec therefore has no applicability here, as the unrebutted damages theory presented at trial here was that the reasonable royalty award should be the same regardless of which or how many of the OBU patents were found valid and infringed. No. 13-1527, slip op. at 10 (Fed. Cir. Jan. 11, 2019). Indeed, the Federal Circuit in WesternGeco recognized as a possible "theory that the entirety of the [damages] could be supported by infringement of any one" of the asserted claims of the three Bittleston patents, but simply found that the theory was not established in that case at trial. Id. at 11. In contrast, Mr. Carter explicitly established that theory here and Wabtec elected not to rebut it.
    [3] Wabtec's complaint about Siemens' argument during closing concerning the unlikelihood of the USPTO making mistakes on 8 different patents in 3 different technology areas is unfounded.  As an initial matter, the observation was accurate and comports with common sense and experience, but more importantly, Wabtec raised no objection at the time and

The Honorable Leonard P. Stark
February 4, 2019
Page 4

     Westinghouse's Position:   On January 29, 2019, the PTAB found all challenged claims (including the asserted claim here) of the '110 Patent unpatentable.  The PTAB's Final Written Decision is attached as Exhibit B.[4]   Additionally, on January 31, 2019, the PTAB found all challenged claims of the '471 Patent unpatentable.   The '471 Patent is related to the asserted '926 Patent and similarly relates to prevention of movement.   The PTAB's Final Written Decision regarding the '471 Patent is attached as Exhibit C.   The PTAB also denied Siemens' request for rehearing of the unpatentability decision regarding the '801 Patent, which in some respects overlaps with the scope of the '926 Patent.   The '801 Patent rehearing denial is attached as Exhibit D.    Westinghouse believes these decisions demonstrate that the likelihood of the asserted claim of the '926 Patent being found unpatentable is significantly high.

     In view of these PTAB decisions, judgment cannot be entered as to the '110 Patent and is premature with respect to the '926 Patent.   *See, e.g.*, *Prism Techs. LLC v. Sprint Spectrum L.P.*, No. 18-1108, slip op. at 12 (Fed. Cir. Feb. 1, 2019); *Ultratec, Inc. v. Sorenson Comms., Inc.*, Case No. 13-cv-346, 2015 WL 2248437, at *4–5 (W.D. Wis. May 13, 2015) (staying case pending IPR appeals after judgment entered); *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 996 F.2d 1236 (Fed. Cir. 1993) (holding that stay of permanent injunction and damages proceedings was appropriate pending appeal of final reexamination decision); *Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, Case No. 08-60996-CIV, 2010 WL 2976859, at *5–6 (S.D. Fla. July 20, 2010) (terminating permanent injunction and staying execution of final judgment and post-judgment discovery pending appeal of final decision in ex parte reexamination). Additionally, Siemens made the choice to present its "PTC" damages without regard for which patents were found to be infringed.   Because of this choice, the jury's award of damages for the PTC patents must also be set aside.   *See WesternGeco LLC v Ion Geophysical Corp.*, No. 13-1527, slip op. at 10 (Fed. Cir. Jan. 11, 2019) ("The general rule is that when a 'jury was told it could rely on any of two or more independent legal theories, one of which was defective,' the general verdict must be set aside.  We have recognized such a rule '[i]n such a situation—such as this one—where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent,' and at least one of the patent claims was held to be defective." (internal citations omitted)).   Westinghouse raised this possibility at the pre-trial conference and, despite understanding that these decisions were imminent, Siemens pressed forward to trial and sought no allocation of damages sufficient to preemptively address the PTAB's decisions.  Moreover, the '110 Patent unpatentability decision may also require setting aside the entire liability verdict, especially in view of how Siemens chose to present its case at trial.   *See, e.g.*, Trial Tr. at 1670:12–22 (arguing the Patent Office cannot have "mistakenly granted these patents, not just one mistake, eight different patents . . .").[5]

---

thus has waived the issue.  And Wabtec's suggestion that a reference to 8 rather than 7 patents in closing was so prejudicial as to require that judgement not be entered is nonsensical in any event.

    [4] This decision was entered as confidential pending the parties' proposed redactions, if any, and so is filed under seal at this time.

    [5] Siemens' heavy reliance on Mr. Carter's testimony at trial underscores the problem with entering judgment on the damages verdict for the PTC patents.  Just because Westinghouse did not put on its own rebuttal damages expert does not mean the jury was entitled to rely on Mr.

The Honorable Leonard P. Stark
February 4, 2019
Page 5

### 2.  __Post-Trial Motions__

The parties respectfully submit that all post-trial motions arising from the jury verdict (or otherwise seeking relief) be filed 28 days after judgment is entered, with responsive briefs to be filed 28 days after opening briefs, and reply briefs to be filed 14 days after responsive briefs. All briefing shall comply with the page limits specified in the Local Rules.

Siemens' Position:  Siemens presently intends to file at least the following post-trial motions: (a) a motion for enhanced damages pursuant to 35 U.S.C. § 284 and attorney fees pursuant to 35 U.S.C. § 285 in view of the jury's finding that Westinghouse willfully infringed the asserted EOT patents; (b) a motion for an award of supplemental damages for infringement of the asserted patents during the periods (i) February 26, 2018 (*i.e.*, the day after the last day for which Wabtec produced sales information) through January 25, 2019 (*i.e.*, the date of the jury verdict), and (ii) January 26, 2019 through the entry of Final Judgment; and (c) a motion for an award of pre-judgment and post-judgment interest on the damages awarded by the jury, as well as an award of Siemens' recoverable costs incurred in prosecuting this litigation.

Regarding the above-referenced motion for an award of supplemental damages, Wabtec's counsel inexplicably ignored repeated requests by Siemens' counsel that Wabtec produce updated sales data before trial. Having failed to produce the data when it should have, Wabtec now argues that doing so is "premature" in view of its unfounded complaints about the validity of the jury's verdict and, in any event, the information supposedly has not been "reviewed and finalized yet." Neither argument justifies delaying resolution of the remaining damages issues in this case, or resolving the remaining damages issues in the piecemeal manner that Wabtec seems to be suggesting. Siemens therefore requests that the Court order Wabtec to produce updated sales data for the accused products covering the period from February 26, 2018 through January 31, 2019 within five days, as the quantum of supplemental damages to which Siemens believes it is entitled is directly dependent on that information. Wabtec should not be permitted to unilaterally deny Siemens the ability to file its motion by refusing to produce the necessary sales data, which it should have done long ago in any event.

---

Carter's flawed analysis. It also does not mean that the jury accepted Mr. Carter's unsupported assertion that "the number of patents don't really matter." We simply have no insight into what value, if any, the jury placed on any single patent. The jury did not award Siemens the full amount of damages it sought, so the jury clearly weighed the patents in some manner. The '110 Patent was the only OBU patent where the jury found literal infringement, so it is entirely possible the '110 Patent formed a significant part, if not all, of the jury's PTC damages verdict. Siemens also improperly referenced Mr. Martinez's rebuttal opinions even though Westinghouse did not put him on the stand, further prejudicing Westinghouse. *See* Trial Tr. at 1753:9-20 ("Another witness that wasn't here was Mr. Martinez. . . . [W]e were looking forward to asking him about how he got to that silly number. And Mr. Martinez didn't come here to be exposed to cross-examination."). Even accepting Mr. Carter's testimony that a single patent was sufficient to support his analysis, it is entirely possible the jury based its damages on the '110 Patent only. The point is no one knows how the jury reached this conclusion. *WesternGeco* confirms that in this situation, a new damages trial is warranted. Slip op. at 10.

The Honorable Leonard P. Stark
February 4, 2019
Page 6

Regarding the post-trial motions that Wabtec intends to file, as described below and in Wabtec's letter brief filed on January 28, 2019 (D.I. 451), after the jury verdict, Siemens contends that Wabtec's proposed motion for JMOL on Siemens' claim for willful infringement of the EOT patents is impermissible, as Wabtec waived that issue when it failed to preserve it at the close of Siemens' case-in-chief as required by Rule 50(a). Wabtec did not move for JMOL on the issue, but instead merely opposed Siemens' Rule 50(a) motion for JMOL at the close of Wabtec's case-in-chief, as it admits in its argument below. *See* Trial Tr. at 967:18-973:17, 1546:22-1553:21. Both the Federal Circuit and this court have found the right to seek JMOL after a jury verdict to have been waived under similar circumstances. *See Comaper Corp. v. Antec, Inc.,* 596 F.3d 1343, 1347 (Fed. Cir. 2010) (affirming finding that defendant waived right to JMOL after jury verdict by only arguing against plaintiff's Rule 50(a) motion on the same issue); *Intellectual Ventures I, LLC v. Canon Inc.*, 104 F. Supp. 3d 629, 641 n.2 (D. Del. 2015) ("This is not a case of mere 'technical noncompliance,' but is rather akin to the situation in *Comaper* where the movant failed to meet 'the letter and spirit of the rule.'"). Even the cases cited by Wabtec require at least a "cursory motion" for JMOL under Rule 50(a) in order to renew a motion under Rule 50(b), rather than merely opposing the other party's JMOL motion on the same issue. Accordingly, Wabtec should be barred from filing its proposed motion.

Similarly, Wabtec's proposed motion for JMOL of non-infringement of the '461 and '860 Patents based on an ensnarement defense (*see* D.I. 451 at 1-3) is improper because the issue was not sufficiently presented in the Final Pretrial Order—or at any other time before trial—and thus was waived. As will be explained more fully in Siemens' response to Wabtec's letter brief (to be filed on February 4), although Wabtec's Statement of Contested Facts and Statement of Contested Issues of Law in the Final Pretrial Order mention the ensnarement doctrine as a general legal proposition, Wabtec failed to identify any particular claim of any particular asserted patent to which the defense allegedly applied, nor did Wabtec identify any particular prior art reference that allegedly would be ensnared by Siemens' alternative claims for infringement under the doctrine of equivalents. Nor did Wabtec even mention the ARES system on which it now relies in the Pretrial Order or jury instructions as being relevant to its ensnarement defense. It likewise never identified ARES or any other prior art as purportedly being ensnared during summary judgment proceedings, again only vaguely alluding to the doctrine of ensnarement. The first time Wabtec identified ARES as supposedly forming the basis for its ensnarement defense was on the last day of evidence at trial, after both sides had rested their cases-in-chief and Siemens' technical expert on the OBU patents had already provided his rebuttal testimony. Contrary to Wabtec's suggestion below, the issue is not whether Wabtec provided notice that it was generally contemplating an ensnarement defense, but rather whether Wabtec ever sufficiently disclosed the basis for that defense such that relevant evidence could have been introduced at trial, including through cross-examination of the fact witnesses on which Wabtec purports to now rely.

Indeed, it is telling that Wabtec's ensnarement defense now relies on alleged prior art – the ARES system – that none of its technical experts, particularly including Dr. Kaufman, testified about at trial. Wabtec's letter brief cites only to high-level testimony about ARES presented by one of its fact witnesses, Frank Wilson, but neither Mr. Wilson nor any of Wabtec's experts compared the asserted claims of the '461 or '860 Patents, or even any particular

The Honorable Leonard P. Stark
February 4, 2019
Page 7

limitation of those claims, to any alleged prior art reference describing the ARES system, let alone explained how application of the doctrine of equivalents would result in ensnarement.[6] Accordingly, Wabtec should be barred from filing its proposed motion on this issue as well.

Westinghouse's Position: Westinghouse presently intends to renew its Rule 50(a) motions on the following issues: (1) no infringement of the configurable device patents ('461 and '860 Patents); (2) no infringement of the movement authority patent ('926 Patent); (3) no lost profits for the EOT Patents; (4) no indirect infringement of the BOS Patents; and (5) no willful infringement of the EOT Patents.  Westinghouse believes briefing and/or a hearing on the ensnarement issues is warranted.  Westinghouse also intends to file a motion to set aside the jury's verdict regarding the '110 Patent and damages for the PTC Patents and to stay entry of judgment regarding the '926 Patent in view of the PTAB's decisions of unpatentability as detailed above.  Finally, Westinghouse intends to file a motion for a new trial.  A fundamental underpinning of the damages award—the validity of the horn patent—has been undone by the PTAB's finding that the sole asserted claim of the '110 Patent, claim 11, is unpatentable. As a result, the jury's damages award is unsupported.   Along those same lines, Siemens made improper comments during the course of the trial relying on the fact that there were eight patents in suit.  *See, e.g.*, Trial Tr. at 1670:12–22 (arguing the Patent Office cannot have "mistakenly granted these patents, not just one mistake, eight different patents . . ."). Thus, the PTAB's decision regarding the '110 Patent casts doubt on the entire liability verdict.  Westinghouse's motion for a new trial is also premised on the fact that the infringement and validity verdicts were against the weight of the evidence.

As for Siemens' waiver arguments, both fail.  Westinghouse has raised the ensnarement issue multiple times throughout the course of this case including (1) at summary judgment (briefing and hearing) (*see, e.g.*, D.I. 343 at 8–9; Hr'g Tr. at 106:25–108:2); (2) in the pretrial order as Siemens concedes (D.I. 406, Ex. 3 at 6, Ex. 5 at 4); (3) during the conference on jury instructions (Trial Tr. at 1375:25–1376:19); and (4) in a Rule 50(a) motion properly made before the case was submitted to the jury (Trial Tr. at 1550:21–1551:11, 1553:12–21).  Siemens cannot feign surprise at the ensnarement issue, particularly in view of this Court's statement during the jury instruction conference:

> I'm not going to ask for an advisory verdict. I do agree things are complicated enough and everyone has their rights with respect to ensnarement, movement for judgment as a matter of law, either side.  To the extent that ensnarement remains a live and ripe issue after verdict, I understand that there will need to be some further proceedings, and I'll confer with the parties on what those are and when they are.

Trial Tr. at 1379:16–23.  In view of the jury's findings of infringement under the doctrine of equivalents, there can be no doubt that the ensnarement issue remains live and ripe for further proceedings at this time.

---

[6] Of course, Mr. Wilson could not have offered such testimony in any event, as he was never disclosed pursuant to Rule 26(a)(2) as a witness who would present opinion testimony at trial, nor was he presented as an expert at trial.

The Honorable Leonard P. Stark
February 4, 2019
Page 8

Regarding Westinghouse's Rule 50(a) motion for no willful infringement of the EOT Patents, this issue was also properly presented before the case was submitted to the jury. Rule 50(a) does not impose any requirement that Westinghouse move at the close of Siemens' case-in-chief. *See* Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made ***at any time before*** the case is submitted to the jury." (emphasis added)). Counsel for Westinghouse explicitly stated on the record that Siemens has "not adduced any evidence of egregious behavior in this case." Trial Tr. at 1551:20–21. The statement was made in the context of both parties moving for judgment as a matter of law on a host of issues. *See generally* Trial Tr. at 1546:22–1553:21. It is well-settled that "even a cursory motion suffices to preserve an issue on JMOL so long as it serves the purpose of Rule 50(a), i.e., to alert the court to the party's legal position and to put the opposing party on notice of the moving party's position as to the insufficiency of the evidence." *Finjan, Inc. v. Symantec Corp.*, Civil Action No. 10-cv-593, 2013 WL 5302560, at *31 n.22 (D. Del. Sept. 19, 2013) (citing *Western Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010) (citation omitted); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 n.6 (Fed. Cir. 1996) (finding pre-verdict motion requesting judgment of no infringement sufficient to support post-verdict motion concerning the doctrine of equivalents); *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1324–25 (Fed. Cir. 1991) (same)). Westinghouse has satisfied the requirements of Rule 50(a) and is entitled to seek judgment as a matter of law under Rule 50(b).

With respect to Siemens' request for additional sales information, Westinghouse believes any such request is premature until issues regarding the verdict and entry of judgment are resolved, which is what Westinghouse informed Siemens in its response. Further, as Westinghouse informed Siemens, its sales records through the date of the verdict have not been reviewed and finalized yet, so Westinghouse is not able to provide that information at this time.

\* \* \* \* \*

The parties are available at the Court's convenience should Your Honor have any questions or wish to discuss any of these issues.

Respectfully submitted,

*/s/ Karen Jacobs*

Karen Jacobs (#2881)

KJ:pab

cc:       All Counsel of Record (via electronic mail)